SUSAN KNAGGS, et al., v. JOHN J. MASTIN.

1. FINDINGS OF COURT; *Effect of; Conflicting Evidence.* Where an action is tried by the court, without the intervention of a jury, and the facts of the case are established by a general finding of the court upon conflicting and contradictory evidence, it must always be presumed that all the controverted facts were found and established in favor of the party for whom the court found, and against the party against whom the court found.

2. EXPRESS TRUSTS—*How Created.* No express trust concerning real estate can be created in Kansas except in writing.

3. MARRIED WOMEN; *Contracts, Concerning Separate Property.* In this state, a married woman may contract and be contracted with, concerning her separate real or personal property; sell, convey and incumber the same, and sue and be sued with reference thereto, in the same manner, to the same extent, with like effect, and as freely as any other person may in regard to his or her real or personal property.

4. DEED; CONVEYANCE; *Irregularity; Estoppel.* Where the owners of land execute a written instrument with the design and intent that the same shall be filled up so as to appear on its face to be a valid conveyance of such land, and it is filled up in accordance with their directions, and by their authority, by a person who afterward delivers it to the grantee and receives the full sum agreed to be paid as the purchase-money, (said grantee being ignorant of any irregularity in the execution of said deed,) and the grantors afterward, being fully advised of the delivery of the deed and payment of the purchase-money, permit the grantee to enter into possession, and make valuable improvements, become the tenants of such grantee, and pay him rent for such premises for a term of years, and during all the time treat said conveyance as valid, and the grantee as the owner, they will be held to be estopped from claiming that said deed should be set aside on account of said irregularity in its execution.

*Error from Johnson District Court.*

On the 15th of December 1870 *Susan Knaggs*, and *A. H. Knaggs* her husband, brought their action against *Mastin*, praying that a certain paper purporting to be a deed be

adjudged and decreed to be null and void, and the same, and the record thereof, canceled. Said deed or instrument was dated April 22d 1868, and purported on its face to convey in fee simple, with covenants of general warranty, a five-acre tract of land in Shawneetown, Johnson county, and also an eighty-acre tract of land in said county. On said 22d of April said *Susan* was the owner and held the legal title (by deed from her father) to said five-acre lot, and there was thereon a two-story brick dwelling, where she and her said husband resided; the eighty-acre tract was bought and paid for by said *A. H. Knaggs*, and by his request the title taken in the name of his wife. On that day said *Susan* and said *A. H.*, in the presence of Charles G. Keeler, (the father of *Mrs. Knaggs*,) and one J. G., signed a printed paper commonly known and called a "blank deed," and acknowledged the execution thereof, before said J. G., as notary public, to be their act and deed. They delivered said paper, so signed by them, to said Keeler, and he afterward, on the same day, at the office of said J. G., filled up the same as a deed of conveyance from said *Susan* and *A. H. Knaggs* to *John J. Mastin* of said two tracts of land, and on the next day delivered said deed to said *Mastin*. All the other facts in the case are fully stated in the opinion of the court. The plaintiffs claim that said deed is void. The action was tried at the November Term 1871. The court made a general finding "for the defendant and against the plaintiffs," and gave judgment accordingly. A new trial was refused. The bill of exceptions contains all the testimony. The plaintiffs bring the case here for review.

*Devenney & Green*, for plaintiffs in error:

This case resolves itself into four principal propositions—1st, That in the conveyance from Keeler to Mrs. Knaggs there is no resulting trust; the defendant cannot, by parol, prove an express trust. 2d, The blank form of a printed deed signed by Mrs. Knaggs and her husband, and afterwards filled up by Keeler to Mastin, is absolutely void. 3d, Even

were it competent to show, by parol, authority to Keeler to sell the homestead place to Mastin, or to fill up the blank deed, they have failed to show such authority. They occupy the affirmative. 4th, We deny that a parol ratification of the deed would make it valid; but, assuming that it would, there is no evidence to show that Mrs. Knaggs has ever ratified the deed to Mastin. The deed therefore being void, and never having been ratified by her, it remains void, and should be set aside, as to her at least.

1. A blank paper, signed, sealed and delivered, and then written upon, is no deed; and inasmuch as it contained nothing, nothing could pass by it. 9 Wend., 67, 525; 2 Hilliard on R. P., 294, § 80; 8 Blackf., 413; 52 Maine; 2 Wash. on R. P., 554, § 7; 24 N. Y., 330; 18 N. H., 340; 2 Iowa, 316; 29 Ill., 306. Authority to an agent to sell land may be conferred by parol; but authority to convey or complete a deed, must be conferred by writing; and the authority must be equal in dignity to the instrument to be executed; and no previous parol assent, or subsequent parol adoption will sustain the act of the agent. Ch. 43, Gen. Stat., § 5, p. 505; 2 Kent., 815; Story's Agency, §§ 48, 49; Fry on Spec. Perf., 237; 6 Humph., 261; Paley's Agency, 156; 1 Halsted, 339; 5 Ben. Mon., 74; 6 Wheaton, 173; 3 Scam., 27; 9 Iredell, 218; 10 Paige, 386; 14 Wis., 631; 4 Sneed, 324; 11 Ill., 544; 29 Maine, 148.

2. The deed is utterly void, and the plaintiffs are not equitably estopped, in any manner, to make the defense that the conveyance is invalid. 6 Allen, 305; 9 id., 387; 19 Iowa, 274, 290; 2 Wallace, 24; 29 Ill., 306; 6 M. & Wels., 200; 27 Iowa, 378. And it is wholly immaterial whether *fraud* was, or, was not, an element in the transaction. 2 Dev. & Batt., 381. If upon any rule of law, it can be claimed that Keeler was the agent of Mrs. K., then Mastin was bound to notice the extent of Keeler's agency: Mastin knew (according to his own evidence) that the title was in her, and he should have inquired as to Keeler's authority to make a perfect deed

out of a blank form of a printed deed. 9 Peters, 628; 22 Ind., 36; 13 Iowa, 214; Story on Agency, 314.

3. Plaintiffs are not estopped to prove that no title passed by the instrument; because such proof in nowise contradicts the "blank form of a printed deed." 19 Pick., 341; 13 id., 33; 8 Cowen, 543; 7 Queen's Bench, 708.

4. If the deed from Keeler to Mrs. Knaggs was valid when made, as it was, it cannot be rendered fraudulent by his subsequent embarrassments or indebtedness to Mastin. 10 Mich., 300; 12 Iowa, 218; 17 id., 195; 34 Ill., 382; 9 Ohio St., 430; 35 id., 553. Defendant cannot claim title under or through the deed from Keeler to Mrs. K., and at the same time attack that title. 33 Mo., 249; 15 Ill., 236; 13 Iowa, 330; 14 Ohio St., 339, 348. Nor can defendant assail Mrs. K.'s title for *fraud* between Keeler and her, he not being a judgment-creditor; nor was he a simple creditor at the date of the deed to her. 36 Mo., 378; 3 Ohio St., 256; 2 Johns. Ch., 144; 2 Mich., 355; 17 Iowa, 514; 2 Story's Eq. Jur., § 1216*b*, note 1; 13 N. Y., 488; 19 Wis., 42.

5. Keeler is *estopped* from saying no title passed by the warranty deed from himself to Mrs. Knaggs. He had the deed placed on record. 4 Denio, 480; 2 Smith's Lead. Cas., 584, 684; 1 Ohio St., 119; 16 Mo., 495; 5 Johns. Ch., 23; 3 Johns. Rep., 124; 13 Pick., 116; 2 Wash. on R. P., 472, §§ 32, 464; 1 Greenlf. Ev., § 263; 4 Peters, 83 to 88; 4 Blackf., 437. And the placing of a deed upon record by the grantor is a sufficient delivery. 15 Mich., 94; 3 Ohio St., 377; 24 Iowa, 10; 28 Ind., 40.

6. It is essential to the validity of a well-executed deed, that there should be a delivery, and if there is no delivery, the deed is of no force. Mrs. Knaggs never re-delivered the deed, after the blanks had been filled by Keeler. Breese, 282; 1 McLean, 243; 12 Wend., 105; 5 Porter, 267; 17 Iowa, 485; 12 Ill., 132; 3 Wallace, 636.

7. No trust results from the mere payment of money, except as is provided in §§ 1, 7, 8 of our act upon Trusts and Powers: Comp. Laws, 897. And see also page 354, §§ 1, 7,

and page 568, §§ 1, 4.    Express trusts cannot be created by parol.    See same statutes, and 2 Blackf., 207; 15 Mich., 94; 2 Iowa, 60, 860; 9 Wis., 379; 2 Story's Eq., 1199; 28 Ind., 35; 14 Ill., 503; 20 N. Y., 39.

8.  But it is claimed that Knaggs and wife *ratified* the deed. The general rule is, that, "the fact of a ratification must be affirmatively shown, by evidence as clear as would be required to show an original authority in the agent or person to do the particular act; or, as strong as would be required to show a lawful consent in the first instance."   Story's Agency, §§ 240, 241, 252, 256; 19 Wis., 62; 2 Dev. and Batt., 381; 6 Wheaton, 173, 577; 2 Johns., 424; 13 Iowa, 455.   If the act of the supposed agent (claimed to be ratified) was done in *writing*, the law requires a *written ratification*.  12 N. H., 205; Story's Agency, §§ 242, 252; 9 Wend., 57; 29 Maine, 148. Mere *silence* does not amount to a ratification or estoppel. 19 Wis., 62; 17 Mo., 64; 5 Cush., 596; 9 Allen, 54; 2 Grant's Cases, 96; 37 Ala., 91; 43 Penn. St., 170; 20 Ark., 601; 5 Duer, 273; 17 Md., 150.   Nor is a mere acknowledgment a ratification.  7 Ind., 553.   A "ratification" can only be, after full and fair information to the principal, of all the facts and circumstances of the transaction to be ratified. Story's Agency, § 243; 4 Seldon, 401; 9 Peters, 607; 25 Wend., 430; 12 Allen, 487–493; 18 Texas, 811; 18 Iowa, 90; 23 Ill., 470; 18 Maine, 436; 12 Minn., 298; 14 Wis., 553; 27 Ind., 399.

But it is claimed that Mrs. Knaggs received the purchase-money, or a part of it.   It was not her duty to ask her husband from *what source* he received the money he gave her; and if her husband gave her a portion of the money or consideration stated in the Mastin deed, ($3,200 being the price of the 80 acres of land,) is she *estopped* from impeaching the deed for that reason?   Keeler held the $3,200, intermingled with other moneys of the husband, subject to the order of A. H. Knaggs, and to be paid as Knaggs desired to draw it —when the wife wanted money for herself and children her husband told her to go to Keeler and get it.   Knaggs testifies

that Keeler had been *his* banker for years—had had some $5,000 of his money; that he and his wife drew it out as they needed it, and this is not denied by Keeler. Is she to be *estopped* for this reason? Keeler states that he told Knaggs and wife, some time after the Mastin deed was executed, that they would have to pay some little rent to Mastin for the house—he is not sure that he told Mrs. K.: this is denied in positive terms by them. The husband says that about a year ago Keeler spoke to him about rent, when they were about to settle up their long-standing accounts, and he then protested to Keeler against anything of the kind; and that he never has paid any rent, and that he had no authority from his wife to pay rent. The wife testifies that she never authorized her husband to pay rent, and knew nothing of such talk. Neither Keeler nor Mastin produced any receipts, nor can Keeler tell the amount of rent, if any were paid. Mastin does not testify that either of the plaintiffs ever promised him to pay rent for the homestead place. Is the wife to be *estopped* and deprived of her home on anything so flimsy and groundless? The wife and children cannot be affected or prejudiced by any acts of the husband. If the rights of the husband only were involved, there might be some force in the position of defendant; but the rights of the wife and those of the family are involved and must be regarded.

But it is argued that she *acquiesced,* because she has lain by from the date of the blank deed until the commencement of this action, without taking any measures to test the claim of defendant to the premises; (27 Iowa, 378.) It seems from her evidence that defendant met her on the streets of Kansas City, in the summer of 1870, and asked her when she would be ready to give up possession to the Shawnee brick-house property, as it was his; he had bought it of Keeler, and had agreed with Keeler to allow them (plaintiffs) to remain there until January 1871. She replied that it was her property, and she never expected to get out of it; it was her home. This is the first intimation she had that she had signed a deed to Mastin; she had supposed that she had signed a mortgage.

We claim that it was her right to remain in possession. She had been enjoying the actual possession of the house from the day her father conveyed it to her until the 19th of December 1870, and is still in possession. Mastin has never sought to disturb her possession, but she brought this action to set aside the deed. It is admitted on all sides that she never received a farthing for the brick-house property, worth, at least, $4,000, and received no consideration for the execution of the blank form of a printed deed, unless it be in the fact of her husband furnishing her funds in the manner hereinbefore stated, which was nothing more than the lawful duty of a husband to support his family.

A. H. Knaggs is included in the action, but is a mere formal party, however. But the acts of the husband cannot prejudice the rights of the wife and children to the homestead, and the acts of or *ratification* by a husband does not bind the wife. 26 Iowa, 305; 44 Ill., 451; 36 Cal., 11; 19 Wis., 62; 17 Mich., 465; 57 Penn. St., 410; 1 Cold., (Tenn.) 67; 15 Peters, 107; 30 Ala., 382; 6 Ind., 289; Story on Agency. §§ 242, 243.

It appears in evidence that the husband drew from Keeler, on one occasion, the sum of $400, at a time when Keeler had four or five thousand dollars in his hands, (an unsettled balance belonging to the husband,) and Knaggs put that sum of $400 into a piece of unimproved land and had the deed made to his wife; that his wife knew nothing of the purchase or conveyance, as it appears from her testimony and that of her husband. It is nowhere disclosed by the evidence, that the wife knew of the $400 being a part of the $3,200, the price of the eighty-acre tract; and how can she be estopped, or said to have ratified the Mastin deed, without a knowledge, on her part, of all the facts and circumstances on which the estoppel, or ratification, depends? for it is upon this supposed ratification, or estoppel, the defendant, with the aid of Keeler, insists that the wife has been divested of the title to her patrimony and her home. 18 Iowa, 90; 26 Iowa, 305; 8 Gill. & Johns., 248. And if she never surrendered posses-

sion and never acted upon the acts of her husband or of Keeler, there is neither ratification nor estoppel. 18 Iowa, 101; 9 Barn. & Cres., 577; 8 Wend., 481.

Again: Mastin testifies that he visited the brick-house-property with a view of purchasing, and that Mrs. Knaggs, he thinks, was there—never saw her before and was not introduced to her—took dinner in the house, etc. Mr. K. recollects the visit, and corroborates Mrs. K. in the fact that *she was not at home* on that day at dinner. Upon what principle, then, can she be estopped? 33 N. Y., 648; 3 Stockton, 312; 8 Gill. & Johns., 248. A void act is incapable of ratification: 36 Penn. St., 513; 12 Iowa, 195; 12 Ohio, 364; 38 Ill., 44; Story's Agency, § 240. There has been no ratification: 3 Strob., 403; 18 Iowa, 99; 9 Peters, 607; 16 Cal., 591; 36 N. Y., 79; 25 Maine, 131; 10 Conn., 279; 21 Wis., 458; 15 La. An., 569; 7 Ala., 371. Receiving money generally without knowledge that it is from a particular source, is no ratification: 1 E. D. Smith, 175; 52 Penn. St., 400; 27 Vt., 268; 25 Maine, 131; 20 Iowa, 393; 33 Cal., 46; 28 Ill., 136; 7 Ala., 371. The term "ratification" necessarily implies the existence of the relation of principal and agent; and Keeler does not claim that he was the agent of Mr. and Mrs. Knaggs, or either of them. The plaintiffs state that he was not their agent. And in order for Mrs. K. to be bound by her supposed acts of ratification, she must know that she will not be bound without such acts. 24 Ill., 535; 32 Penn. St., 340; 3 Rich., 42; 9 B. Mon., 413; 9 Geo., 164.

9. Estoppels are *odious;* not favored by the courts, and are strictly construed. Herman on Estoppel, § 334. And there must be a good and sufficient consideration to support an estoppel. 7 Kas., 110; 12 Ind., 348; 27 Vt., 268; Gen. Stat. 1868, p. 183, § 8; 8 Wis., 471; 34 Penn. St., 242.

Mrs. Knaggs cannot be barred, by an estoppel, of her right to her real estate, only by deed or record; not by any thing *in parol.* 10 Allen, 512; 18 Iowa, 100; 8 Blackf., 24; 3 B. Mon., 175; 4 Mart., La., 475; 14 Mich., 164; 16 N. Y. 354; 5 Wallace, 795; 26 Maine, 384; 17 Md., 212; 27

Texas, 317; 31 Geo., 544; 21 Ind., 437; 48 Penn. St., 148; 18 Mo., 486; 6 Met., 476; 37 Ala., 91. An estoppel concludes one from telling the truth, and therefore must be clear and certain to every intent, (31 Penn. St., 331,) and must not be taken from inference, or mere loose and vague expressions, ambiguous in their character, made without a full knowledge; such cannot create an estoppel. Herman on Estoppel, § 214, and cases cited in note 5. A necessary element of an equitable estoppel is, that the party should have been fully apprised of her rights at the time of the words or conduct by which she is sought to be estopped: 11 Humph., 433; 15 Ala., 309; 12 Minn., 298; 14 Wis., 553; 30 Vt., 307; 13 N. H., 373; 7 Ohio, 105; 9 Iredell, 165; 12 Allen, 401; 13 Iowa, 214; 6 Johns. Ch., 167; 28 Me., 540; 6 Ind., 292; 36 N. Y., 79; 28 Ill., 135. And an estoppel *in pais* is never allowed to operate where it would fail to protect the innocent: 38 Ill., 455.

10. We claim there was *fraud* in obtaining the signature of Mrs. Knaggs, by Keeler. He represented to her that it was a paper designed to raise money on; that he was not intending to take the property away from her; that he was indebted to Mastin and wanted to *secure* him: and after the blank deed was signed, Keeler stated to the notary, (when he and Keeler were going from Mrs. Knaggs' house to the office of the notary,) that he was sorry he had to take the brick-house property away from her, but that he wanted to raise money to secure Mastin; and gave the notary to understand it to be a mortgage. 2 Phil. Ev., 272; 2 Kent's Com., 482; 1 Story's Eq. Jur., § 224; 7 Iowa, 12. Fraud vitiates everything into which it enters; and a conveyance obtained by fraud, is treated by the courts as never made. 15 Iowa, 37; 4 Edw. Ch., 215; 10 Johns., 463; 5 Gilm., 582; 9 Wheaton, 241–288; 5 Story's Eq., § 1265.

*F. M. Black*, for defendant in error:

1. By the statute of this state the deed of a married woman requires no separate examination; no acknowledgment is

necessary, and she is authorized to contract and convey her property as a man. (Gen. Stat., 185, § 7; also, ch. 62, p. 563; 3 Kas., 172.) Being thus relieved from the common-law disabilities, she is bound by her actions and conduct in relation to her contracts the same as a man.

2. Alterations may be made, or blanks filled, in a deed, subsequently to its execution by authority or consent given before or after the execution, and such authority may be shown by parol: 2 Sharsw. Bl., 308, note; 8 Cow., 118; 9 Cranch, 28; 2 Wallace, 24; 17 S. & R., 438. Here the blanks were filled before the delivery of the deed. When delivered it was perfect in form; and the authority to Keeler to fill the blanks and deliver the deed is stated by him, and necessarily implied from the testimony of plaintiffs themselves.

3. But aside from the authority to Keeler in the first instance, the new matter set up in the answer constitutes a complete defense; the court did and necessarily must have found these issues in favor of the defendant; and that the finding is abundantly supported by the evidence, the record fully shows. The finding of the court ought not to be disturbed: 3 Kas., 282; 4 Kas., 177.

4. That the plaintiffs received their part of the purchase-money, from time to time, for two years after the deed was delivered, and a part of this was invested in other lands, and the title thereto taken to Mrs. Knaggs, and by her sold, cannot be denied. No principle of equitable estoppel is better settled than that where parties, entitled to avoid a sale, adopt and ratify it by receiving the whole or any part of the purchase-money, equity will preclude them from setting it aside; and it is immaterial whether the sale is void or voidable, or whether it takes place by operation of law, or springs from the act of the parties. 2 Smith's Lead. Cases, 662; 24 Iowa, 118; 14 Ind., 409; 4 McCord, 239. The case in 19 Iowa, 274, 296, is in no way in conflict with these authorities, but expressly approves them.

5. The plaintiffs by receiving their part of the considera-

-tion from time to time, knowing that it was from the sale of these lands and lots, remaining silent for over two years, and in the meantime occupying the house as the property of Mastin, with full knowledge of all the facts, have ratified and confirmed the act of Keeler in filling the blanks, and cannot be heard to question the validity of the deed: 4 McCord, 239; 21 N. Y., 283; 43 Mo., 113; 14 Mich., 124, 208.

6. A married woman cannot take advantage of her own negligence, and thus work a fraud upon an innocent purchaser; and especially is this true when she is authorized to contract as a *femme sole:* 11 Ohio St., 203; 13 Iowa, 446.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the plaintiffs in error to set aside a certain deed of conveyance purporting to have been executed by the plaintiffs to the defendant in error, and purporting to convey a certain house and lot in Shawneetown, Johnson county, and a certain eighty-acre tract of land also situated in said Johnson county. The action was tried by the court below without the intervention of a jury. The court found generally for the defendant and against the plaintiffs. No special findings of either law or fact were made by the court. A few of the facts are admitted by the pleadings, but the most of them are controverted. A few more of the facts may be said to be admitted by the evidence, as the evidence concerning them is clear, conclusive, and all one way. But a very large proportion of the facts, probably a majority of them, is not only controverted by the pleadings, but is also controverted by the evidence—the evidence concerning them being conflicting and contradictory. Where the facts are admitted by the pleadings, or where the evidence concerning them is clear, and all one way, we shall take the facts as so established, whether they are in favor of the plaintiffs or the defendant. But where the facts are controverted by the pleadings, and the evidence concerning them is conflicting and contradictory, we shall consider that

they have been established in favor of the defendant and
against the plaintiffs. Where facts are established

1. Conflicting
evidence;
findings of
fact by court.

by a general finding of a court, it must always be
presumed that all the controverted facts are estab-
lished in favor of the party for whom the court finds, and
against the party against whom the court finds. Therefore,
whenever some of the facts might be found in favor of one of
the parties, and some of them might be found in favor of the
other party, it would be prudent at least for any party who
had doubts concerning his case to request that the court
should make special findings of fact and of law. Civil Code,
§ 290.

The following facts we deem to be undisputed and uncon-
troverted, in this court, though some of them were contro-
verted in the court below: The plaintiffs, Susan Knaggs and

Statement of
the facts.

A. H. Knaggs, were husband and wife, during
all the transactions involved in this litigation,
and were husband and wife when this action was commenced,
and up to a short time before the rendition of the judgment
in this case, when they were divorced. All the property
included in said *blank* deed, and appearing to have been con-
veyed, belonged originally to Charles J. Keeler, who was the
father of said Susan Knaggs. A. H. Knaggs purchased the
said eighty-acre tract of land from said Keeler with his own
funds, but had the deed thereto made to his wife, Susan
Knaggs. Knaggs and his wife occupied said house and lot,
while it belonged to Keeler, as a residence. On April 16th
1868, while they so occupied said house and lot as a resi-
dence, Keeler executed a deed for the same to his daughter,
Susan Knaggs, without any consideration whatever therefor,
and had the deed recorded. His daughter never had the
deed in her possession, and never even saw it. About this
time A. H. Knaggs made a contract with Keeler to sell back
to Keeler said eighty-acre tract of land. Within four or five
days after Keeler executed said deed for said house and lot to
his daughter, he made a contract with the defendant John J.
Mastin to sell him said house and lot and said eighty-acre

tract of land. Pending the negotiation, Mastin visited all of said property to look at it. A. H. Knaggs was at home at the time, and knew all about it. In fact, A. H. Knaggs sold to Keeler the eighty-acre tract of land in contemplation of Keeler selling it to Mastin. Whether Susan Knaggs was at home or not, at that time, is disputed. On April 22d 1868, which was after the sale from Keeler to Mastin, and just six days after Keeler had executed said deed for the house and lot to his daughter Susan Knaggs, both the plaintiffs, Susan Knaggs and A. H. Knaggs, signed a printed blank warranty deed, the same being in the usual form of ordinary blank warranty deeds, and duly acknowledged the same before a notary public who was present. Keeler afterwards filled up the blank so as to make it appear to convey said house and lot and said land to said John J. Mastin. This is the deed the plaintiffs now seek to have set aside. A. H. Knaggs knew when he signed said blank deed that it was to be filled up so as to make it be just what it afterwards was when Keeler had filled up the blanks. Whether Susan Knaggs had such knowledge or not, is disputed. In fact, A. H. Knaggs had full knowledge of all the transactions from the beginning to the end; but whether Susan Knaggs had such knowledge, is disputed. After Keeler filled up said blanks, as aforesaid, he delivered the deed to said Mastin at Kansas City, Missouri, apparently all regular, and properly executed. This was done on the next day after the deed was executed. Mastin did not know that said deed had been executed in blank, when he received the same; nor did he at any other time know it until about the time this suit was commenced, which was more than two and a half years after the deed was executed. Mastin paid Keeler in full for the property when the deeds were delivered to him. He paid Keeler in all $9,250—$6,000 for this property, and $3,250 for other property that Keeler sold to him at the same time. He paid it by placing that amount to the credit of Keeler at the bank of J. J. Mastin & Co., Kansas City, Missouri. Keeler owed the bank at that time $5,000, which he paid; and he also at the

same time paid a mortgage on a part of the land for $1,500. This left the bank owing him $2,750, which the bank afterwards paid. Keeler afterward paid to the Knaggses the amount in full for said eighty-acre tract of land, which was $3,200. But whether he paid it all to A. H. Knaggs, or a part to him and a part to Susan Knaggs, or whether he paid any part with her knowledge, is disputed.

The other facts, which it must be presumed the court found and established upon conflicting and contradictory evidence, are as follows: Susan Knaggs had full knowledge of all the material transactions involved in this controversy. Just prior to the time that Keeler executed said deed to her for said house and lot she agreed that if he should execute the same she would deed the property back to him whenever he should want to sell it. She was present when Mastin visited the property in contemplation of purchasing it, and knew of him going through the house, up and down stairs, to look at it, and made no objection. On the contrary, she often expressed herself, after the sale, that she was glad that her father had sold the property, as she wanted to leave Shawneetown. She knew when she signed the blank deed that her father had sold the property to Mastin, and knew that the blank deed was to be filled up just as it was afterwards filled up. Her father explained the whole thing to her, and told her that he would fill it up just as he afterwards did fill it up. She intended that the deed should be a conveyance of the property to Mastin. The writing material was so poor at her house, where she signed the deed, that her father told her that he "would take it back to the office and fill it up." After all this explanation she signed the blank deed, and duly acknowledged it before a notary public who was present for that purpose. Keeler filled up the blanks on the same day before the notary public affixed his name and seal, and on the next day delivered the deed to Mastin at Kansas City, as aforesaid. Keeler afterwards paid Knaggs and his wife for said eighty acres of land. The payments were made at different times, a portion to Mr.

Knaggs and a portion to Mrs. Knaggs, and each knew at the time he or she received it for what it was received.   At least $1,000 of the same, and probably more, was paid by Keeler drawing his check in favor of Mrs. Knaggs on said Mastin, and giving it to her.   A portion of the money was paid to A. H. Knaggs, and he and his wife bought other land with it, and took the deed in his wife's name.   After the sale of the property to Mastin, both of the plaintiffs were notified that they would have to pay rent for the house to Mastin, and neither made any objection thereto, but both seemed to consider it all right.   Keeler, by previous arrangement, paid the rent on said house and lot for two years, by paying the taxes on Mastin's lands in Johnson county, Kansas.   For one year Keeler gave the rent to Knaggs and his wife, his son-in-law and daughter.   For the other year Knaggs paid Keeler in the settlement of their accounts.   Mastin took possession of the eighty-acre tract of land as soon as he purchased it, and has made valuable improvements thereon, and is still in the possession thereof.   Knaggs often spoke to Mastin about the property.   Once he requested Mastin to give him permission to sell it as a land agent.   Mastin gave him such permission, and gave him the price of each piece of the property separately.

. We have probably been unnecessarily prolix in the statement of the facts of this case.   We have been so because counsel for plaintiffs have filed an elaborate brief, discussing points which we do not deem to be in the case as it is presented to this court, although they may have been in the case as it was presented to the court below.   Said counsel have discussed the case as though all the evidence for the plaintiffs were true, and all the evidence for the defendant were false. The reverse would be more proper.   Under the findings of the court below we should consider all the evidence of the defendant as true, and all the evidence of the plaintiffs which conflict therewith as untrue.   With this explanation we shall now proceed to discuss the questions of law involved in the case.

I. It must be conceded that the entire title to both the house and lot, and the eighty acres of land, was vested in Susan Knaggs after the deeds for the same were executed by 2. Express trusts. her father to her. No express trust was created in favor of Keeler for the house and lot, nor in favor of A. H. Knaggs for the land; for that kind of trust can be created, under our statutes, only in writing. (Comp. Laws, § 7, ch. 41, p. 354; § 4, ch. 102, p. 569; § 1, ch. 209, p. 897. The corresponding provisions of the Gen. Stat. of 1868 are § 8, ch. 22, p. 186; § 8, ch. 43, p. 505; § 1, ch. 114, p. 1096.) And no resulting trust was created in favor of either Keeler or Knaggs by operation of law. The property was hers, and she had a right to hold it and enjoy it as long as she chose, and there was no power to take it from her.

II. But, on the other hand, it must be conceded that in this state a married woman may contract and be contracted with, concerning her separate real or personal property, sell, 3. Married women; contracts. convey, and encumber the same, and sue and be sued with reference thereto, in the same manner, to the same extent, with like effect, and as freely as any other person may in regard to his or her real or personal property. (Comp. Laws, § 9, ch. 41, p. 354; §§ 2, 3, ch. 141, p. 697; § 1, ch. 142, p. 699; Gen. Stat., §§ 3, 7, ch. 22, p. 185; §§ 2, 3, ch. 62, p. 563; § 29, ch. 80, p. 636; *Deering v. Boyle,* 8 Kas., 525; *Wicks v. Mitchell,* ante, 80.) This disposes of a large number of decisions cited by counsel for plaintiffs; for such decisions were made in states where a married woman does not possess such sweeping and extended powers as she does in this state. In fact, in some of those states her legal existence is almost entirely ignored. She is sunk into almost absolute legal nonentity. She rests under almost total disability. She could not make a simple contract for any purpose; and of course she could not create an agent that could make such a contract for her. And where she has no power to make a contract, she of course has no power to ratify a supposed one already made. Where she cannot bind herself by contract, mere acquiescence in a supposed contract cannot

work a ratification nor create an estoppel. And certainly, where she cannot sue or be sued, or assert any legal right except by her husband or next friend, no estoppel can run against her for not asserting her legal rights.

III. Whether this blank deed when filled up, and before any subsequent ratification, was good as a conveyance, is a question which we think is not necessary to be decided now. The writer of this opinion however is of the opinion that a deed executed in the manner in which this deed was executed, should never, under our statutes, (Comp. Laws, § 4, ch. 102, p. 569; Gen. Stat., § 5, ch. 43, p. 505,) be considered good as a *conveyance of title* to real estate except in certain cases where it may be considered good by way of equitable estoppel. (As to estoppel, see authorities cited in defendant's brief.) Nor should such a deed be considered good for any other purpose, except possibly as a simple contract in certain cases upon which specific performance might be enforced. Now, if it be conceded that the mere execution of this deed did not make it good as a conveyance, then the only question necessary to be considered in this case is, whether the other facts, aside from the mere execution of said deed, but taken in connection therewith, are sufficient to make this deed good by way of equitable estoppel. We think they are. We suppose that the claim that A. H. Knaggs has a right to have this deed set aside is abandoned, and that the only question now seriously urged is, whether Susan Knaggs, his former wife, has any such right. We think that neither has any such right. We have already seen that Susan Knaggs' rights are to be determined by the same laws which govern and prescribe the rights of other persons under similar circumstances. Then what are those rights? This is a proceeding in equity to relieve the plaintiffs from the consequences of their own acts. It is a proceeding in equity to set aside a deed which they authorized (though irregularly) to be made. They ask a court of equity to enable them on account of a mere irregularity to commit a fraud upon their grantee. Shall it be

*4. Deed; conveyance; irregularity, estoppel.*

done? We know of no principle of equity that will aid them in such a case. The plaintiffs suffer no hardship. There is nothing inequitable in a daughter conveying to a third person a piece of property for the benefit of her father, without consideration to herself but with consideration to her father, which (property) she received from her father only six days before she so conveys, without paying any consideration therefor to her father, and with the promise on her part that she would reconvey the same whenever her father should desire to sell it. And there is nothing inequitable in a wife conveying property for the benefit of her husband and herself jointly which she received from her husband without any consideration whatever. But there is something very inequitable in a woman, by her own voluntary act, enabling her father, her husband, and herself, to obtain a large sum of money from another person on the strength of such act, and then in attempting to repudiate the act. Mastin, innocently, and ignorant of all the irregularities complained of, (and in this respect, as well as in several others we might mention, this case differs widely from the case of *Burns v. Lynde*, 6 Allen, 305, strongly relied on by plaintiff in error,) paid $6,000 for said property, a full consideration therefor, on the strength of the voluntary act of Mrs. Knaggs and her husband. And will she now deprive him of both the money and the property? Mastin probably paid about $2,800 for the house and lot on said voluntary act, and will she now deprive him of both the money and the house and lot? Can she now, after waiting more than two and one-half years since the deed was executed, all the time acknowledging and acting as though she considered that the deed was valid, be heard to say in a court of equity that the deed is invalid, because it was simply executed irregularly, when in fact it was executed just as she consented and prescribed that it should be executed? Every principle of equity and morality is against such a thing. But the irregularity is not so great as at first view it might seem to be. A deed is good between the original parties without being acknowledged at all. It

may be executed by making the signature first and then filling up the blanks. No law requires that the signature should be the last thing placed to a deed. It is not necessary that the grantor should fill the blanks himself, but any person may fill them with his consent or approval. The consent and approval has been given in this case, and to this deed, time after time, for a period of more than two and-a-half years. The only irregularity is, that the consent and approval were not given after the blanks were filled up, and before the deed was delivered. The consent was given before the deed was filled up, and the approval was given after its delivery. If there had been a second delivery of the deed, with the approval of the plaintiffs, after the blanks were filled up, it would seem that there could scarcely be any question raised with regard to the validity of the deed, either in law or equity; and the repeated recognitions of the validity of the deed after its delivery, with a full knowledge of its contents, would seem to be almost equivalent to a second delivery of the deed. The judgment of the court below is affirmed.

All the Justices concurring.