## C. F. ELERICK v. W. H. BRADEN, *as Sheriff, etc.*

1. JURY — *Treatment of General Finding.* Where only a general finding is returned by a jury upon disputed testimony, it must be treated as a finding of everything necessary to sustain the general one; and if such finding has received the sanction of the trial court, it cannot be disturbed here.

2. FRAUD; *Evidence Supports Finding.* The testimony in the case examined, and held to be sufficient to support a finding that the transfer of a stock of goods was made by the parties with the intent to defraud the creditors from whom the goods were purchased.

*Error from Crawford District Court.*

REPLEVIN, by *Elerick* against *Braden*, as sheriff of Crawford county. Trial at the August Term, 1886, and judgment for defendant. The plaintiff brings the case to this court. The facts are stated in the opinion.

*Cowley & Wiswell*, for plaintiff in error.

*Ware, Biddle & Cory*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is an action of replevin, brought by C. F. Elerick against W. H. Braden, sheriff of Crawford county, to recover the possession of a stock of general merchandise. Braden had attached the goods as the property of J. W. Kinsey, under an order of attachment issued in the action of George W. Stevenson against J. W. Kinsey. The plaintiff claims that he purchased the stock in good faith, for a valuable consideration, from J. W. Kinsey, about the 10th of February, 1885, and was lawfully in the possession of the goods when they were seized. On the other side it is claimed that J. W. Kinsey transferred the goods to Elerick for the purpose of defrauding his creditors, and that Elerick not only had knowledge of the fraudulent purpose, but connived with and aided Kinsey in carrying it out. The jury has, by a general verdict, found the transaction to be fraudulent, and

the court below has given its sanction and approval to that verdict. The principal contention of the plaintiff is, that the verdict is not sustained by the testimony. It is conceded that the case was fairly presented to the jury by the instructions of the court, and in this state of the case we have only to inquire whether the testimony tends to sustain the general finding of the jury. Taking the testimony against Elerick and viewing it in the light most favorable to the defendant, as we must, we have no hesitancy in upholding the verdict. Only a few of the facts disclosed by the testimony need be mentioned. In October, 1884, Elerick was engaged in the mercantile business in the town of McCune, and was carrying a stock of general merchandise valued at about $1,600. There is testimony to the effect that on October 10, 1884, he sold the goods to J. W. Kinsey, who at that time came to McCune from Lawrence, and was unacquainted with merchandising. He had no money of his own, but claimed to have brought with him about $600 of his wife's money, although he was uncertain about the amount. He says that he carried this amount on his person. No inventory was made at the time of this purchase, and he claims to have then paid only $300 on the stock. Elerick remained in the store and sold goods for about forty days and until the stock was reduced in value to about $900. During this time Kinsey worked for Elerick in the store. Then Kinsey says that he paid Elerick about $300 more, and gave his note for the balance due on the stock and took possession, at which time Elerick became a salesman for Kinsey. Elerick says that shortly after he delivered the possession of the goods, and upon which there was considerable due, he loaned Kinsey $900, and a little later he loaned him $200, Kinsey giving no security for its repayment. Soon after Kinsey took possession, the plaintiff Elerick invited and urged wholesale dealers to sell Kinsey goods, representing that he was a good man and financially responsible, who had a stock worth from $2,000 to $3,000, and that his indebtedness did not exceed $300. During the short time that Kinsey was in charge he bought from the jobbers about $2,500 worth

of goods for which he did not pay, and Elerick was the active man in selecting and purchasing the goods, and in trying to assure dealers that they might safely sell to Kinsey. Less than two months after Kinsey took control, and after he had stocked up his store pretty well on the credit plan, he retransferred the entire stock to Elerick. There was no inventory taken, and the goods were lumped off at the stated value of $1,783.15, and a bill of sale was carefully made and placed on record. No cash was paid on this alleged sale except the sum of $81.95, and then Kinsey took some goods out of the store for future use, which they say did not exceed in value $50. It is said that the balance of the payment of this sale was made by the notes and obligations of Kinsey which Elerick held. That these obligations were real, is denied. The notes for $900 and $200, heretofore mentioned, formed the larger part of the payment. Those loans were made, if at all, by Elerick without security, and while Kinsey was considerably indebted to him. Notwithstanding these notes, Elerick was representing to wholesale men that Kinsey was substantially out of debt. Elerick says that the money loaned on these two notes was not taken from the bank, but that he was carrying the same around in his pocket. They were unable to explain the purpose for which the money was loaned, and Kinsey upon an effort failed to account for its disposition, or for the receipts from the daily sales. He says that he paid $300 for a patent stove-polish receipt; that he spent some for lottery tickets; that he lost some upon a wheel of fortune, and that he purchased a check or draft from the McCune bank, but could not say positively whether it was $5.60 or $560. He paid a few small bills that accrued during the brief time that he was proprietor and Elerick was clerk. But whether clerk or proprietor, it is manifest that Elerick was well acquainted with the business done in the store. He knew of the purchases made by Kinsey, and assisted in making them. He knew that the goods were bought on credit, and knew of Kinsey's financial straits; and the facts and circumstances that have been mentioned, as well as others in the record, not

named, are strongly indicative of a preconceived plan of Elerick and Kinsey to defraud the parties from whom the goods were purchased. True, Elerick offers testimony tending to show good faith on his part; but we have only a general verdict, which, being based on disputed facts, and having received the approval of the trial court, must, under a well-established rule, be treated as a finding of everything necessary to sustain the general finding, and held conclusive in this court. (*Knaggs v. Mastin*, 9 Kas. 532; *A. T. & S. F. Rld. Co. v. Blackshire,* 10 id. 477; *K. P. Rly. Co. v. Kunkel*, 17 id. 146; *Winter v. Sass*, 19 id. 556; *Gibbs v. Gibbs*, 18 id. 419; *Stout v. Townsend*, 32 id. 424; *Higginbotham v. Fair*, 36 id. 742.)

There were some objections to the rulings on the testimony, but an examination of them plainly shows that no prejudicial error was committed, and we do not regard them as sufficiently important to require special mention. The judgment of the district court will be affirmed.

All the Justices concurring.