## VIELE v. VAN STEENBERG.

*(Circuit Court, N. D. Iowa, W. D.* May Term, 1887.)

1. SWAMP LANDS—CONVEYANCE BY COUNTY—VALIDITY.
   A conveyance by a county of swamp lands in violation of the act of congress of January, 1855, prohibiting the sale or disposal of such lands until the title thereto is perfected in the state, is void.
2. SAME—PURCHASERS.
   Where the conveyance by a county of certain lands is expressly forbidden by act of the legislature, purchasers are bound to know that the county cannot convey.
3. DEEDS—OPERATION—AFTER-ACQUIRED TITLE—PUBLIC LANDS—TAXATION.
   B. received a conveyance of certain swamp lands from a county violating said act, and by mesne conveyances the title vested in one S. The conveyance

by the county to B. was set aside in a suit brought for that purpose. Subsequently thereto the county became empowered to grant a valid deed of the lands, and a new deed was given by the county to B. The latter again conveyed the premises, and by mesne conveyances they became vested in the complainant. In a suit by him, under Code Iowa, § 893, to redeem the lands from a tax sale and deed given by the treasurer, *held* that, as the original conveyance by the county was void, the grantees thereunder obtained no title by reason of section 1931, Code, providing that "when a deed purports to convey a greater interest than the grantor was at that time possessed of, any after-acquired interest of such grantor, to the extent of that which the deed purports to convey, inures to the benefit of the grantee;" that the proper title was in complainant to allow him to bring the suit under section 897 of the Code, providing that no person shall be permitted to question the title acquired by a treasurer's deed without first showing that he or his grantor had title at the time of the sale, etc.

4. SAME—EQUITY.
Where a conveyance of land is made to one who knows that his grantor has no title, a court of equity, in the absence of evidence of good faith, or that said grantee claimed any interest in the lands, is not bound to hold that the acquisition of a good title by the grantor, long after the date of the deed, shall at once inure to the benefit of said grantee.

5. TAX SALE—REDEMPTION—TITLE—JUDGMENT.
Where, in a suit relating to the title of lands, a decree is sought to bind the parties, not through jurisdiction of the land, and a sale thereof, but by enjoining defendant from asserting a right or title to the land, the suit is a personal one; and if defendant was served only by publication, and made default, the right of himself or his successors in title to appear and be heard in a suit to redeem the lands from a tax sale is not barred.

6. SAME—NOTICE OF REDEMPTION—AFFIDAVIT OF PUBLICATION.
The requirement of Code Iowa, § 894, providing that in the case of non-residents the notice of the time for the expiration of the period of redemption to be given by the holders of certificates of tax sales may be made by publication, that service of such notice shall be deemed complete where an affidavit of such service, and of the mode thereof, *verified by the holder of the certificate of sale, his agent or attorney*, is filed with the treasurer, is not satisfied by the mere filing with said treasurer of the affidavit of publication by the publisher of a newspaper.

7. SAME—FILING NEW AFFIDAVIT.
Nor is the failure to file such affidavit cured, as against one suing to redeem, by filing an affidavit in due form, and obtaining a second treasurer's deed, the suit for redemption having been commenced before such filing or deed given, and after a formal tender by complainant, within the time limited by the statute for the bringing such suits.

In Equity. Bill to redeem land from tax sale and deed.

*J. W. Cory*, for complainant.

*J. H. Swan* and *W. H. Baily*, for defendant.

SHIRAS, J. In this cause the complainant seeks to redeem certain realty situated in Dickinson county, Iowa, from a tax sale made October 2, 1876, for the delinquent taxes of 1875, the bill herein being filed under section 893 of the Code of Iowa. By section 897 of the Code it is provided that "no person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale." The first question presented for determination is whether complainant shows himself entitled to question the treasurer's deed to defendant under the provisions of this section. The land in controversy

is situated in Dickinson county, and forms part of the swamp land coming to that county under the act of congress of 1850, and the state legislation based thereon. The title to the land under the swamp-land act was perfected in the state of Iowa in 1874. Dickinson county was organized in August, 1857. By the act of the legislature passed January 25, 1855, it was enacted "that no swamp or overflowed lands granted to the state, and situated in the present unorganized counties, shall be sold or disposed of till the title to said lands shall be perfected in the state, whereupon the title to said lands shall be transferred to the said counties where they are situated." In 1861 the county deeded the land to Henry Barkman, but, under the provisions of the act just cited, the county had no power to sell the land, and its attempted conveyance was void. In November, 1861, Barkman executed a deed of the premises, with covenants of warranty, to one Henry C. Brewster, and he and his grantees executed like conveyances; the last thereof being to William B. Sigley, in 1862. After the completion of the title in the state in 1874, a patent was issued to the county, and thereupon the county, by warranty deed, conveyed the premises to Henry Barkman on the twenty-first day of November, 1874; and on August 6, 1875, Barkman and wife, by warranty deed, conveyed the land to A. B. Lambertson, by whom it was conveyed to L. E. Nichols, and by said Nichols to complainant, on the fourteenth day of May, 1883. August 29, 1885, the complainant procured a quitclaim from William B. Sigley of the lands in dispute, but this deed was not taken until after the commencement of this suit, and defendant claims that it cannot be considered in determining the case, because it was procured after the suit was brought. Defendant's position is that when the county, in 1874, conveyed the land to Barkman, such title inured to his grantees under the deed executed in 1861, under the provisions of section 1931 of the Code of Iowa, which enacts that, "when a deed purports to convey a greater interest than the grantor was at that time possessed of, any after-acquired interest of such grantor, to the extent of that which the deed purports to convey, inures to the benefit of the grantee."

In *Rice* v. *Nelson*, 27 Iowa, 148, it is held that "any right which, in law or equity, amounts to ownership in the land, any right of entry upon it, to its possession, or the enjoyment of any part of it which can be deemed an estate, makes an owner of it, so far as it is necessary to give the right to redeem;" and in *Foster* v. *Bowman*, 55 Iowa, 237, 7 N. W. Rep. 513, it is said: "The statutes providing for redemption from tax sales should be liberally construed."

In the case at bar it is shown that in 1874 the title to the lands in controversy was perfected in the state of Iowa, and in Dickinson county, which then for the first time became clothed with the right and power to sell the same; that in November, 1874, the county conveyed the land to Barkman, and in 1875 he conveyed same to Lambertson, who in time conveyed to Nichols, the immediate grantor of complainant. Thus we have a perfect and unbroken chain of conveyances from the state and county to complainant.

But it is urged that title did not pass to complainant by means of these conveyances, because Barkman had in November, 1861, executed a deed of the land, with covenants of warranty, to Henry C. Brewster; and that although he had not then any title upon which this deed could operate, yet, when he subsequently acquired title from the county, in 1874, it at once inured to the benefit of Brewster and his grantees. As already stated, when the county, in 1861, deeded the land to Barkman, it had no right or authority to convey the same by reason of the restrictions in the act of 1855, and Barkman and his grantees knew, or were. bound to know, that the county had no right to then sell or convey these lands. Moreover, it is shown in the record that in 1871 a suit was brought in the district court of Dickinson county, in favor of the county against Henry Barkman and others, for the purpose of canceling and setting aside the conveyances of the swamp lands previously made to defendants, and the contracts upon which the same were based, upon the grounds that the same were unauthorized, fraudulent and void; and at the October term, 1871, of said court, a decree, as prayed for, was entered in said cause. It is thus clearly shown that when Barkman executed his deed to Brewster, in 1861, of the lands in dispute, he had no title therein, and for reasons which Brewster was bound to take notice of. The latter knew that the deed from the county to Barkman was wholly void, and that the lands belonged to the county. Under such circumstances, without any proof that Brewster paid anything for the land to Barkman, does it follow that a court of equity is bound to hold that when, 13 years after, the county conveyed the lands by a good title to Barkman, the title thus acquired at once inured to Brewster?

It does not appear that Brewster or his grantees ever claimed any interest in the lands, and it certainly would be going to an extreme length to hold that when Barkman, in 1874, procured the title of these lands from the county, his title at once passed to Brewster by reason of the deed executed in 1861, although the latter made no claim to the land under such deed. All that can be claimed is that perhaps, if Brewster or his grantees had asserted a right to the land, they might have sustained the same; but such possibility should not be held sufficient to overcome the evidence of direct title offered on behalf of complainant, and to defeat his right to redeem. Certainly complainant has a good title, unless a claim should be asserted under the conveyance to ·Brewster. Even if complainant had not procured the quitclaim from Sigley, there is nothing to show that any adverse claim would ever have been made by Sigley to the land; so that it cannot be held that complainant and his grantees did not have sufficient interest to entitle him to redeem.

Sufficient title and ownership in the land to entitle him to be heard upon the question of the right of redemption having then been shown in complainant, we are brought to the consideration of the effect of a decree rendered in the case of *Van Steenberg* v. *Nichols and Sigley,* brought to the September term, 1880, of the district court of Dickinson county, for the purpose of quieting the title of complainant in the land in question. The defendant Nichols was a non-resident of the state of Iowa, and the

only service of notice had was by publication under the statute of Iowa. The action was a personal one. The decree seeks to bind the parties, not through jurisdiction of the land, and a sale thereof in any form, but by enjoining and estopping the defendants from asserting any right or title to the land. As the defendant Nichols did not appear to the action, and was not served with notice other than by publication, and as the decree is personal in its character, it comes within the rule announced in *Hart* v. *Sansom*, 110 U. S. 151, 3 Sup. Ct. Rep. 586, and does not bar the right of Nichols or her grantees to be heard in this court, the same as though such decree had not been rendered.

The sale for taxes under which defendant claims title was made in 1876. Section 894 of the Code of Iowa provides that, after the expiration of two years and nine months from date of sale, the holder of the certificate of sale shall give notice of the expiration of the period of redemption; that, in case of non-residents of the county, service of such notice may be made by publication; that service of such notice shall be deemed to be complete when an affidavit of such service, and of the mode thereof, verified by the holder of the certificate of sale, his agent or attorney, is filed with the treasurer; and the right to redeem shall not expire until 90 days after service of such notice. As construed by the supreme court of Iowa, the 90 days allowed for redemption under this section of the statute does not begin to run until proper evidence of service of notice is filed with the treasurer, and an affidavit of publication by the publisher of a newspaper is held not sufficient evidence of service, as the section expressly requires the affidavit to be made by the holder of the certificate of sale, his agent or attorney. *American Missionary Ass'n* v. *Smith*, 59 Iowa, 704, 13 N. W. Rep. 849; *Ellsworth* v. *Van Ort*, 25 N. W. Rep. 142.

It is admitted in this case that the only proof of the service of notice to redeem, filed with the treasurer of the county in 1879, when the deed of that date was issued, was an affidavit by the publisher of the Beacon newspaper. The treasurer was not authorized to execute the deed, and the right to redeem was not terminated by the issuance thereof. The petition in the present case was filed in August, 1883, before the expiration of five years from the delivery of the deed, and before the period of 90 days had been set to running against complainant.

The fact that in January, 1884, the defendant filed with the treasurer an affidavit in due form, showing completed service of the notice to redeem, and in April, 1884, obtained a second treasurer's deed, cannot avail him as a defense. He then knew that complainant was claiming the right to redeem, and had brought an action to establish such right, and stood ready to pay whatever sum was needed to perfect redemption. Before the suit was brought, the complainant's agent and attorney had called on defendant, and offered to redeem the land, being prepared to make a formal tender; but the defendant refused to allow redemption, or to state the amount he claimed to be due, saying he would not allow redemption unless the courts compelled it, etc. Complainant had also, before bringing suit, made a tender to the auditor of the county, who

refused to receive the same, and denied that the right to redeem existed. Complainant has deposited with the clerk of the courts the amount tendered, and certainly, under these circumstances, it cannot be said that defendant is entitled to hold the land under the second deed, because the same had not been redeemed. Defendant denied complainant's right to redeem, and compelled him to resort to a suit in equity to establish and enforce such right; and, as a defendant to such suit, he is even now resisting complainant's claim to the right of redemption.

He cannot now be permitted to take advantage of the fact that he has procured a second deed from the treasurer under the circumstances disclosed in the evidence. The amount deposited with the clerk by complainant is, as I understand the record, the sum of $98.20, which is sufficient to cover the amount for taxes, penalties, etc. Decree therefore is ordered for complainant, the defendant being entitled to the money on deposit; and the total costs, both in state and federal courts, will be equally divided, each party paying one-half.