## BUMPAS v. COBB et al.
### No. 4451.

Court of Civil Appeals of Texas. Texarkana.
April 19, 1934.

Rehearing Denied April 26, 1934.

See, also, 56 S.W.(2d) 1094.

Wynne & Wynne, of Longview, and Tom F. Head and George McGee, both of Kilgore, for appellant.

E. M. Bramlette, of Longview, Ross M. Scott, House & Wilson, W. B. Handley, and C. J. Shaeffer, all of Dallas, and Fulbright, Crooker & Freeman and C. A. Leddy, all of Houston, for appellees.

SELLERS, Justice.

Celia Cobb and her children by her deceased husband, together with the surviving wife of one of the children, deceased, and the surviving husband of another child, deceased, owned the fee-simple title to 33⅓ acres of land, a part of the Carroll Rhodes survey in Gregg county; the land being community property of Celia Cobb and her deceased husband. On January 14, 1931, Raymond Bumpas secured an oil and gas lease upon the land signed by all of the above parties. The name of Celia Cobb appearing in the lease "Celia X Cobb."

This suit was instituted by Celia Cobb and all of the other parties mentioned against Raymond Bumpas, seeking to cancel the oil and gas lease and remove as a cloud upon their title on the alleged ground of fraudulent representations on the part of Raymond Bumpas in securing its execution and also alleged failure of consideration. Celia Cobb filed a separate amended verified petition in which she alleged her interest in the property and that the defendant, Raymond Bumpas, was claiming some character of interest in the land by virtue of the oil and gas lease dated January 14, 1931, that she did not sign said lease and did not authorize any other person to sign said lease for her, and that said lease was without consideration and void; and prayed that the lease be canceled and removed as a cloud upon her title. At the close of the evidence the court instructed a verdict in favor of the defendant, Raymond Bumpas, against all the plaintiffs except Celia Cobb and the interest of one of the children, Hattie Mobley Cobb, deceased. Upon the jury's finding that Hattie Mobley Cobb signed and acknowledged the lease, judgment was rendered in favor of the defendant, Raymond Bumpas, for that interest. And upon the jury's finding that Celia Cobb did not authorize Leugene Cobb, her son, to sign her name to the oil and gas lease and she had not agreed to the sale of the oil and gas lease on her interest in the land for the sum of $5 per acre, and that the defendant, Raymond Bumpas, was not authorized to send her her part of the consideration by her son, Leugene Cobb, the court entered judgment in favor of Celia Cobb canceling the lease in so far as it affected her interest in the land and removed it as a cloud upon her title. To this portion of the judgment the defendant, Raymond Bumpas, excepted and has duly prosecuted this appeal.

We have concluded, after careful consideration of all evidence, that no issue of fact was made by the evidence in so far as the interest of Celia Cobb was concerned; it being our opinion that she was entitled to an instructed verdict in her favor. The effect of Celia Cobb's verified petition, in which she alleged she did not sign the lease nor authorize any other person to sign it for her, was

to place the burden of proving the execution of the lease by Celia Cobb upon the appellant, or, in other words, the burden was then upon appellant to show that the lease was a genuine instrument. Alamo Trust Co. v. Cunningham (Tex. Civ. App.) 203 S. W. 413, and the cases cited therein. In order to give effect to the lease in so far as the interest of Celia Cobb is concerned, it must have been signed and delivered by her. Hensley v. Pena (Tex. Civ. App.) 200 S. W. 427.

Article 1288 (Rev. St.) provides: "No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing." ·

It has been held that, when the grantor is present and authorizes another, either expressly or impliedly, to subscribe his name, the instrument becomes the deed of the grantor and is as binding as if he had personally affixed his signature. Mondragon v. Mondragon, 113 Tex. 404, 257 S. W. 215. And in such case the requirement of the statute that an agent, in order to sign for a grantor, must be authorized by instrument in writing, has no application. Mondragon v. Mondragon, supra.

▮ There was no contention on this appeal that the appellee Celia Cobb authorized any one in writing to sign her name to the lease, nor is it contended that she signed it herself. The point to be determined is whether there was any evidence which would authorize a jury in finding that Celia Cobb's son Leugene signed her name to the lease under such circumstances as would make the lease valid as to Celia Cobb.

Celia Cobb testified that she did not agree to sell the appellant her lease for $5 an acre, that she told the appellant that she would not sell her lease because her sister had asked her not to sign anything with reference to this property, and we are unable to find any evidence by the appellant which denies the above evidence of Celia Cobb. The next day after appellant had talked to Celia Cobb about the lease, the appellant took Mrs. Gerlach, a notary public, in his car, and they, together with two sons of Celia Cobb, drove down to the house where Celia Cobb was living in Dallas. When they reached the house, the evidence of Celia Cobb and three of her sons is that one of her sons went into the house and asked Celia if she would sign the lease, and she said she would not. This son reported to appellant out at the car that Celia said she would not sign the lease, that appellant then requested Leugene, one of the sons, to sign the lease for his mother, and Leugene asked appellant if he thought that would be all right, and appellant answered that it would. Leugene then signed his mother's name to the lease. This all took place in front of the house at appellant's automobile. All the sons further testified that neither appellant nor Mrs. Gerlach went in the house where Celia Cobb was, and Celia also testified that neither of them came into the house. Appellant admits that he did not go into the house on that occasion. Mrs. Gerlach, the only other witness on the point, testified:

"Q. Was she upon the bed or what? A. She was sitting up, wrapped up. It was a very cold day, and she said she did not sign anything. Her son signed for her.

"Q. Which son? A. Leugene.

"Q. After she said that Leugene signed for her, did you ask her anything about the lease? A. I asked her if she knew what she was signing, and she said—again repeat it—that she did not sign anything, that her son signed.

"Q. Who else was in the house with you? A. I did not see any one.

"Q. Just you and Leugene? A. That is all I saw.

"Q. And Calvin. Now, up to that time had Leugene signed his mother's name to the instrument? A. No.

"Q. Was Raymond Bumpas in the house? A. No.

"Q. Did Raymond Bumpas ever go in the house? A. I did not see him. He did not come in when I was there.

"Q. Where did you find him when you went back outside the house? A. In the car.

"Q. Was you interested in this case in any way? A. Not in any particular, only what actually happened.

"Q. I ask you, did you stay in the car while Calvin went in the house and asked his mother whether or not she would sign it? A. I don't know about that. The minute the car stopped I went in the house.

"Q. Did Calvin ever come out and state in your presence that his mother said she was not going to sign it or have anything to do with it? A. No.

"Q. Did that happen? A. No."

Cross-examination:

"Q. Was that all that was said in there? A. Yes.

"Q. You have testified to everything that was said? A. There was not anything else.

"Q. That is, you asked her if she knew what that was, and she said she did not sign anything. Her son signed for her? A. That is all.

"Q. That is all she said? A. That is all.

"Q. There wasn't anything else said by you or her? A. I don't recall that there was.

"Q. By you or her either? A. No.

"Q. That closed the conversation? A. Yes.

"Q. And you came on out? A. Yes."

Redirect examination:

"Q. Have you had any conversation with the attorney for Celia Cobb? (Objection sustained.)

"Q. When did you get there? A. About nine o'clock this morning.

"Q. Are you a qualified Notary Public? A. Yes.

"Q. Are you the same Notary Public who took these acknowledgments shown on this deed? A. Yes, Estelle M. Gerlach.

"Q. Are you the same Notary that took those acknowledgments? A. Yes."

The above being all the evidence offered on the trial going to show the execution of the lease by Celia Cobb, it appears that there is no evidence that any one signed the lease in her presence and with her consent. In fact, it appears to us to be undisputed that Celia Cobb's name was placed on the lease out at the car and after Mrs. Gerlach had been in the house where Celia Cobb was. In this state of the evidence we think it became the duty of the court under the above authorities to instruct the jury to return a verdict in favor of Celia Cobb, since the undisputed evidence shows that her name was placed upon the lease under such circumstances as not to be binding upon her.

Having reached the above conclusion, appellant's assignments of error complaining of certain misconduct of jury and argument of counsel becomes immaterial and will not be considered.

■ Appellant assigns error on the court's refusal to permit the introduction in evidence of a certain lease executed by Celia Cobb in favor of one of her sons covering the same land here involved, executed subsequent to the lease of January 14th. It is contended in this connection that appellant would have been entitled to recover the title to Celia Cobb's interest conveyed to her son under the doctrine of after acquired title. We cannot sustain this contention. The interest of Celia Cobb in the land was separate and distinct from that of her children. Appellant knew that to be a fact at the time he secured the lease of January 14th. This lease was void as to the interest of Celia Cobb. This being true, appellant had no claim whatever upon her title, and, if she afterwards conveyed it to her son, appellant could acquire no rights thereby, since the son had only conveyed and agreed to convey to appellant his particular undivided interest in the land at the time the lease of January 14th was executed, and there was no failure of conveyance of the son's undivided interest.

There is in appellees' brief what is termed a cross-assignment of error, but we have concluded that it wholly fails to meet the requirements of assignments of error, and it will not be considered.

The judgment of the trial court will in all things be affirmed.