TOWN OF GLENROCK, WYOMING, a Municipal
Corporation,

*Plaintiff and Appellant,*

vs.

WILLIAM ABADIE, CORA H. SKINNER, PHIL-
LIPS PETROLEUM COMPANY, et al.,

*Defendants and Respondents.*

(No. 2580; July 14th, 1953; 259 Pac. (2d) 766).

For the plaintiff and appellant the cause was submitted upon the brief and also oral arguments of Mil-

416

dred A. Barber and William P. Dixon of Glenrock, Wyoming.

For the defendants and respondents the cause was submitted upon the brief and also oral arguments of Thomas O. Miller of Lusk, Wyoming, and Edward S. Halsey of Newcastle, Wyoming.

OPINION

HARNSBERGER, Justice.

On February 25, 1920, one Otto C. Engelking, as party of the first part, and Charles R. Skinner as party of the second part, signed an instrument in writing which provided, in part, as follows:

"That the party of the first part in consideration of the sum of Nine thousand Dollars to be paid as hereinafter set forth, the party of the first part agrees to sell and convey to the party of the second part, and by these presents does sell and convey to the party of the second part all of the surface right and an undivided one-half interest in all minerals, coal, oil gas, and minerals of every character, under and in and to the following described real estate to wit, * * * Lot Four (4) of Section Four (4) Township Thirty-three (33) North of Range Seventy-five (75) * * * west of the 6th P. M.,"

On the same day Engelking executed a warranty deed to Charles R. Skinner and Cora H. Skinner for the lands covered by the contract, but failed to make any reservation or exception of the mineral rights.

On March 29, 1920 the Skinners entered into the following agreement with the Town of Glenrock:

"WE, the undersigned hereby agree to sell to the Town of Glenrock for the amount of Five Thousand Dollars the following described piece of land:

"All that portion of our land bounded as follows: Beginning at the point of intersection of the right of way of the C. & N. W. Ry. Co. on the North side of their track, and the center of the main channel of Deer Creek; thence running down the center of Deer Creek as at present said channel exists to a point intersecting the division line between said land and what is known as the McDonald Corner; thence running East along said division line to the W. line of the Mrs. John Millar lane; thence running South to the N. line of the C. & N. W. Ry. Co. Right of way; and thence running West along said Right of way line to the point of beginning; subject however to an accurate survey (expense of which is to be borne equally between buyer and seller) and which is to be made as soon as possible.

"We hereby acknowledge receipt of Town Warrant No. 1983 for $100.00 (One hundred dollars) as part payment on said land and hereby agree to deliver Warranty Deed to said land to the Town of Glenrock upon completion of said survey and subject to the following

provision: That one-half (½) of the coal, oil and mineral rights on said land were reserved by Otto C. Engelking and only our one-half (½) of said mineral rights can be deeded by us to said Town and this agreement will be made subject to our contract with Mr. Engelking as regards future mineral leases or operations.

"Said piece of land contains thirty (30) acres more or less."

The description of the tract to be sold under this "agreement" thus had for its East boundary line, the West line of the Mrs. John Millar lane and was to contain 30 acres more or less.

On April 15, 1920, the Skinners gave their deed to the Town of Glenrock for the lands, without, however, making any reservation or exception of mineral rights, and making the East boundary line of the tract, the East line of lot four (4) in section four (4), instead of the West line of the Mrs. John Millar lane. The deed also stated the area described contained twenty-five (25) acres more or less.

Notwithstanding their conveyance of the tract to the Town, the Skinners subsequently, and on October 4, 1920, gave their warranty deed to the said Otto C. Engelking, purporting to convey an undivided one-half mineral interest in the lands. Thereafter, and on June 6, 1921, the Town of Glenrock by its warranty deed conveyed back to the Skinners an undivided one-half mineral interest in the lands, and on June 9, 1949, the Town entered into an oil and gas lease covering the tract with the Phillips Petroleum Company. The Town then brought its suit to quiet title to the tract, pleading its ownership and also a title by adverse possession. Cora H. Skinner—who was joined as a defendant— contested the action and, by cross-petition, alleged herself to be the owner and in possession of an undivided one-half mineral interest in the lands concerned,

pleaded mistakes in the Engelking-Skinner deed and in the Skinner-Town deed, and prayed that her title thereto be quieted.

Mrs. Skinner, while not specifically asking for reformation of the February 25, 1920 deed from Engelking to herself and husband or of the April 15, 1920 deed from her husband and herself to the Town of Glenrock —so as to make such deeds conform to the respective contracts pursuant to which they were given, nevertheless alleged that mistakes occurred in these deeds in that (1) they both failed to make proper reservation to Otto C. Engelking of one-half of the mineral rights, and (2) that the deed of April 15, 1920, conveyed some four to five more acres than the parties intended. By cross-petition she also sought to establish and have quieted in herself the title to the undivided one-half mineral interest which she had received back from the Town of Glenrock by the deed of June 6, 1921. She also denied the possession of the Town and denied that the Town had acquired title by adverse possession.

The Town, in answer to this cross-petition, denied there was any mistake in the deed of April 15, 1920 by which it received conveyance from the Skinners; pleaded the Skinners had been guilty of laches and the running of the Statute of Limitations.

In reply to the charge of laches and the defense of limitations, Mrs. Skinner pleaded equitable estoppel against the Town, alleging she and her husband had been misled by and had relied upon representations and advice of the officials of the Town of Glenrock as to the effect of the contract and deed of February 25, 1920, and as to the effect of their deed of April 15, 1920; that the Town and its officials had represented to the Skinners that as the Engelking interest was specifically mentioned and set out in the agreements of February

25, 1920 and March 29, 1920, the Engelking undivided one-half mineral interest would not—and did not—pass to the Town of Glenrock by virtue of the deed of April 15, 1920 given by Mr. and Mrs. Skinner.

The cross-petitioner also replied that the Town had also agreed that in consideration of the Skinners permitting the description in their deed of April 15, 1920 to remain as written, with the result that the Town of Glenrock would get more acreage than was contemplated by the agreement of March 29, 1920, the Town would—and did by its deed of June 6, 1921—convey to the Skinners an undivided one-half interest in the minerals of the lands in question.

The case was tried to the court without a jury and a judgment was rendered, finding generally in favor of the defendant and cross-petitioner, Cora H. Skinner, and against the plaintiff, Town of Glenrock, Wyoming, and quieting Mrs. Skinner's title to an undivided one-half interest in the oil, gas and other minerals of the lands in controversy.

The matter is brought to this court by the direct appeal of the plaintiff, Town of Glenrock, Wyoming.

The Town complains that the judgment is contrary to law, contrary to the preponderance of the evidence, that it erroneously reforms the deeds in question—although no reformation was prayed, and that such reformation was contrary to law, and the need therefore was not established by clear, substantial and convincing proof; also, that the court erred by failing to find the defendant, Cora H. Skinner, was guilty of gross laches, and in failing to hold that the claim of Cora H. Skinner was barred by the Statute of Limitations of this State.

The appellant contends that the February 25, 1920

deed from Engelking to Skinners conveyed both minerals and surface to the Skinners; that the deed of April 15, 1920, conveyed the whole of such interest to the Town of Glenrock; that the October 4, 1920 deed from Skinners to Engelking did not pass any title at the time it was given; that the June 6, 1921 deed from the Town to the Skinners was executed to give force and effect to the Skinners' deed of October 4, 1920, and divested the Town of only one-half of the minerals it owned, and that such one-half interest immediately passed to Engelking by virtue of the warranty deed of October 4, 1920; that the Town, having received from Skinners all of the mineral interest and reconveying back to Skinners only one-half of such mineral interest, still retains the other one-half mineral interest in the land.

The gist of Mrs. Skinner's contention is that she has never parted with the one-half mineral interest she received from the Town by its deed of June 6, 1921.

It may be admitted for the purpose of this case that the deed from Engelking to Skinner contained a mistake, and that is true also as to the deed dated April 15, 1920 from Skinners to the Town of Glenrock. It may also be admitted for the purpose of this case that the deed of June 6, 1921 for a one-half interest in the minerals from the Town to the Skinners, was made in order to compensate the Skinners for some extra land not contemplated by the parties according to their contract, although to do so would require us to accept the improbable.

The contract between the Town and the Skinners called for thirty acres more or less. The land actually conveyed by deed was twenty-five acres. Mrs. Skinner contends that this deed conveyed five acres more than it should, so she would have us believe that the

contract really contemplated o n l y twenty acres—which would mean there was a mistake of thirty-three and one-third percent (33-1/3%. It is more than difficult to believe that the Town's officials were so stupid or glaringly negligent as to pay $5,000 for a tract understood to approximate thirty acres when, in fact, the tract contained only twenty acres. This unlikelihood is further fortified by the witness, Kimball, a member of the Town's council when the contract was made and who alone of all witnesses knew the actual facts, who testified that the Town was to get all of the Skinner land east of Deer Creek.

However, this case may be decided on undisputed facts.

It is not—and cannot be—disputed that the deed from the Skinners to the Town, dated April 15, 1920, conveyed all of the mineral interest in the land in controversy. It is also undisputed—and it cannot be successfully disputed—that the Town conveyed to the Skinners only one-half of the mineral interest by its deed of June 6, 1921, leaving the title of record to the other one-half mineral interest remaining in the Town where it has been unquestioned for over thirty years. It is also seemingly admitted by both parties that Engelking owns one-half the mineral interest. Where did he get it? Engelking did not reserve it in his deed to the Skinners of February 25, 1920; the Town did not convey it to Engelking; therefore, any mineral interest Engelking now holds must be the interest he received by virtue of the Skinners' deed of October 4, 1920. It cannot be anything else. True, the deed was made at a time when the Skinners had completely divested themselves of their whole title and before the Town's deed of June 6, 1921 restored to them a one-half interest in the minerals, but whether the one preceded the other cannot make any difference.

When the Skinners, by their warranty deed, conveyed to Engelking a one-half mineral interest, which they did not possess, and thereafter acquired such an interest, the after-acquired interest i n u r e d to the benefit of Engelking. It is said in 31 C.J.S. 203, Section 21, that—" * * * The general rule is that, if a grantor of real estate having no title, a defective title, or an estate less than that which he assumed to grant, subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit. *    *    *    ".

Hence, the Skinners parted with their one-half mineral interest received by the Town's deed of June 6, 1921 as effectively as if the Town had conveyed that interest to the Skinners prior to the Skinners having conveyed the same to Engelking. In consequence, any contention that the Skinners never parted with the one-half mineral interest which they received by the Town's deed of June 6, 1921 is without merit.

The situation in this case may be stated in another way. If it be true that the one-half mineral interest conveyed to the Skinners on June 6, 1921 is still the property of Mrs. Skinner, then either Engelking has no interest at all—which is contrary to the contention of both of the parties—or else the interest which is described in the then unauthorized deed of October 4, 1920 from the Skinners to Engelking is the one-half interest which the Town has never conveyed or parted with. This is, of course, contrary to the facts, and contrary to the position taken by both parties.

As above stated, the Town has had the unquestioned and undisputed title to one-half of the mineral interest in question for over thirty years, and has never conveyed it either to Engelking, to Skinners, or to anyone else. How can it be deprived of that interest? Not by

showing the conveyance of June 6, 1921, for the Town had the right to convey one-half of the interest in what it then had, and it had the right to retain the other one-half, which it did. There is no possible way by which to deprive the Town of that one-half interest which it retained, except to attack the deed given by the Skinners to the Town on April 15, 1920, for one reason or another, and the only reason—if any—that exists in this case is by reason of a mistake in that it should, as claimed, have conveyed only one-half of the mineral interest. Such an action is an action to correct or reform a deed and is now, as hereafter shown, barred by the statute of limitations. Mrs. Skinner, in her cross-petition, pleaded the mistake, and asked for equitable relief. That cross-petition may be considered as sufficient for asking the reformation of a deed, although that specific relief was not asked.

Plaintiff claims by adverse possession. Counsel for Mrs. Skinner argue that there could be no adverse possession because the mineral and surface rights were severed, citing The Ohio Oil Company vs. Wyoming Agency, 63 Wyo. 187, 179 P. (2d) 773. The case is not in point. It would apply if the contest in this case were between the Town and Engelking. In the case at bar, the Town has had the record title to and the surface and one-half mineral interest for over thirty years. That one-half mineral interest, to which the Town had such record title, has never been severed, and the rule of adverse possession would seem to apply clearly where the right has been unquestioned for that period of time. We need not dwell on that point. The Town had the right to interpose the plea of limitations when the cross-petition for affirmative relief was filed by Mrs. Skinner. 53 C.J.S. 936, note 88; Sanders v. Sanders, 117 Cal. App. 231, 3 P. (2d) 599; Bradbury v. Higginson, 167 Cal. 553, 140 P. 254;

Bryant v. Swetland et al, 48 Ohio St. 194. That plea was interposed in this case.

When courts of law and of equity were separate, the latter were not absolutely governed by any statute of limitations, although they generally applied a comparable time. Thus, it is said in 19 Am. Jur. 345, 346:

" If the complainant has not offered any explanation of his delay in instituting suit and it appears that before he asserted his claim, he permitted the lapse of a period which is similar or comparable to one appearing in the provisions of the statute of limitations, relief will be denied. Courts of equity it is said, uniformly decline to assist a person who has slept upon his rights and show no excuse for his laches in asserting them. "

But, under our statute, actions at law and suits in equity are blended, and we have but one form of action called a civil action. Section 3-301 Wyoming Compiled Statutes, 1945. Under such a statute, at least in many states, the statutes of limitation apply in all actions, whether formerly denominated at law or in equity. 21 C.J. 251, note 77; 30 C.J.S. 557, notes 16 & 17; Oakes v. Howell, 27 Howard's Practice Rep. 145; Bryant v. Swetland et al, 48 Ohio St. 194, 206; Terry v. Davenport et al, 185 Ind. 561, 574, 112 N.E. 998. Thus, it is said in the Ohio case cited:

" It is firmly settled in this state, that the statute of limitations applies to all civil actions, whether they be such as before the adoption of the code of civil procedure were called actions at law or suits in equity, except certain specified actions which the statute expressly exempts from its operation; * * * " (48 Ohio St. 194, 206)

Our statute of limitations does not specifically apply to a case such as before us. It has, as is true in many other states, a so-called residuary clause (53

C.J.S. 1076, et seq.), in Section 3-509, Wyoming Compiled Statutes, 1945, reading as follows:

" An action for relief, not hereinbefore provided for, can only be brought within ten years after the cause of action accrues. "

Our statute was taken from Ohio, and it has been held that the statute quoted applies to an action for the reformation of an instrument. Bryant v. Swetland et al, 48 Ohio St. 194. And, it is stated in 53 C.J.S. 1076, 1078, that the residuary clause applies to actions " * * * for the reformation of deeds and other instruments on the ground of mistake * * * ". See also Morris Plan Bank v. Scott, 176 Tenn. 496. Further cases, holding that the statute of limitations applies to correction of mistakes in such instruments may be found in 1 Wood on Limitations (4th Ed.) pp. 299, 301; 53 C.J.S. 1069, note 8; 53 C.J.S. 1072, note 41. Under some statutes the action accrues when the mistake was made. Bryant v. Swetland et al, supra; Kithcart v. Metropolitan Life Ins. Co., 150 Fed. (2d) 997, citing Missouri cases; Barnes et al v. Barnes et al, 157 Tenn. 332, 8 S.W. (2d) 481. Under other statutes the cause of action accrues when the mistake is discovered. In Travis v. Glick, 150 Kan. 132 and 718, 91 P. (2d) 41, and 96 P. (2d) 624, it is held that a person is deemed to have notice from the time that an instrument is recorded. A case of interest herein is Kennedy et al v. Brown, (Tex. Civ. App) 113 S.W. (2d) 1018, 1020, 1021. In that case, as in this, a contract provided that a deed for certain property should reserve certain mineral interest. The deed, made pursuant to the contract, did not contain the reservation. An action brought nine years later sought reformation of the deed. The statute provided that an action for reformation by reason of mistake should be brought within four years after discovery of the mistake. The

court held that action was brought too late, stating among other things:

" * * * In the absence of circumstances which prevented him from reading it and informing himself of its contents, he was charged with knowledge of its provisions when he executed it, regardless of whether he read it or not. It was unquestionably his duty to read it and inform himself of its provisions, and if he failed in that respect, the law charges him with full knowledge and notice of its contents. Williams v. Rand et al., 9 Tex. Civ. App. 631, 30 S.W. 509; Womack v. Western Union Tel. Co., 58 Tex. 176, 44 Am. Rep. 614; Barclay v. Falvey et al., Tex Civ. App., 100 S.W. 2d 791; American Freehold Land Mortg. Co. v. Pace et al., 23 Tex. Civ. App. 222, 56 S. W. 377.

" * * * Even if appellee were not charged by law with knowledge and notice of the contents of the deed and the absence therefrom of the reservation of the mineral rights which constitutes the mistake of which he complains, we think nine years extends far beyond the time that would be considered reasonable for a man of ordinary prudence to have discovered he had been deprived of valuable property rights by a deed which was at all times accessible to him, and we cannot accede to the contention of appellee that he would not be charged with some degree of diligence unless something happened that would have the effect of calling it to his attention.

" * * * We perceive no reason why appellee should not have discovered the mistake in time to have had it corrected or brought his suit within the period of the limitation provided by the statute. The deed being of record in the public records of the county where the land was located and where appellee resided for several months after its execution, afforded him ample opportunity to read it and ascertain its provisions. We think it would be doing violence to the rule of reason if we should hold that a man of ordinary prudence who was looking after his property interests, as such a man would, is not charged with the duty of ascertaining a matter so vital and patent. * * * " (113 S.W. (2d) 1018, 1020, 1021)

Certainly, the responsibility for the difficulty in which Mrs. Skinner finds herself rests solely with her and her deceased husband. They could have prevented any question from arising had they timely made correction of the failure of Engelking to reserve to himself his one-half mineral interest. It was the Skinners' sole fault that they conveyed to the Town more than they intended. Being themselves responsible for the errors made, and having neglected for over thirty years to institute proceedings which would in all probability have given them relief, it is now too late to complain.

The Skinners knew that the records showed the Town to be the owner and possessed of the one-half mineral interest which is now claimed. Under that record title the Town had impliedly and constructively the possession of the one-half mineral interest which it had not alienated, for as is said in 42 Am. Jur. 220, Sec. 43:

" The holder of a valid deed to real estate, whether it be a tax deed or a deed from the owner himself, impliedly and constructively has the possession of the property described in the deed   *          *         "

The respondent had knowledge of all the facts and circumstances bearing on the alleged mistakes. She had more than ample time and opportunity to establish her claim in the courts. By reason of her lengthy delay, the Town was given every reason to believe that the Skinners either claimed no rights in the lands or had elected to abandon them and, it is apparent, that after all these years the condition and value of the property had materially changed due to the discovery of oil.

These facts parallel the conditions under which it is said in 19 Am. Jur. "Equity", Sec. 498, p. 344, that

it would be unjust to allow the assertion of such a claim:

" The adjudicated cases 'proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that, because of the change in condition of relations during this period of delay, it would be an injustice to the latter to permit him now to assert them. ' "

Further, there is no explanation or reason given by the respondent to excuse her omission to take action to establish her claim. The respondent did plead that certain representations had been made by the Town's officials—including its attorney—which might have constituted an equitable estoppel to plead limitations on the theory that the Skinners were led to believe by the Town officials that the Town made no claim to the minerals, but the record does not contain any evidence whatsoever to support such plea, and no other excuse for the respondent's negligence is offered.

In the case at bar, more than thirty years had elapsed since the mistake—if any—was made. If the correction may be made at this time, it might be made fifty or a hundred years from now. That cannot be the law. Some force must be given to the statutes of limitation.

For the reasons stated, the judgment must be reversed, and the cause remanded to the District Court with instruction to enter judgment quieting the plaintiff's title to the surface and an undivided one-half interest in the minerals of the lands described in the deed of April 15, 1920 from Charles R. Skinner and Cora H. Skinner to the Town of Glenrock.

Reversed and remanded with instruction.

BLUME, C. J., concurs

RINER, Justice: (Dissenting).

The District Court of Converse County entered a judgment in favor of the defendant, Cora H. Skinner, now the respondent, and against the plaintiff, the Town of Glenrock, Wyoming, now the appellant. The suit in which this judgment was rendered and entered was one brought by the town above named in May 1950 against the defendants to quiet the title in it to certain property in said town in which both parties claimed an interest.

## I

The allegations in the petition were the usual ones in a suit of that character. In addition the plaintiff pleaded that it and its predecessors in interest have been in actual, continuous, open, notorious and uninterrupted possession of the said premises for more than ten (10) years preceding the filing of its complaint in or to the premises involved which are described as: "that part of Lot 4, Section 4, Township 33 North, Range 75 West of the 6th P.M. lying east of the center channel of Deer Creek, the center channel being described therein by metes and bounds." (Note: There is no allegation of adverse or hostile possession by the Town, nor is there any proof thereof as pointed out by this court in the Ohio Oil Co. vs Wyoming Agency, infra). It is also stated that the Phillips Petroleum Co., a Delaware Corporation, "has a good and sufficient leasehold interest in and to the aforesaid premises" which plaintiff does not seek to set aside.

The defendant, Cora H. Skinner, answered the pe-

tition or complaint admitting that she claims an interest in the land and premises described. She denies that : "Plaintiff is in actual possession, or that it is entitled, to possession, or that the Plaintiff and its predecessors in interest have been in actual, continuous, open, notorious and uninterrupted possession for more than ten years preceding the filing of its Complaint in or to the land or premises described." Defendant also denied each and every other allegation in the Complaint not heretofore specially admitted.

As an amended cross-petition defendant pleaded an alleged contract between Otto C. Engelking and Charles R. Skinner whereby the former agreed to sell the latter all the surface rights and an undivided one-half (½) interest in all the minerals under and to Lot 4 of Section 4 Twp 33 North, Range 75 West for $9,-000.00. That on the same day Otto C.Engelking made and delivered to Charles R. Skinner and defendant, Cora H. Skinner, a Warranty Deed conveying to them the lands in question with other lands, said deed in its paragraph r e a d i n g : "KNOW ALL MEN BY THESE PRESENTS: That Otto C. E n g e l k i n g (single) grantor of Converse County, Wyoming, for and in consideration of the sum of Nine Thousand Dollars, to me in hand paid, conveys and warrants to Charles R. Skinner and Cora H. Skinner grantee, of_____ County, State of Wyoming, the following described real estate property:" Then follows a description of the lands conveyed . . . "hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this State. Given under my hand, this 25th day of February, A.D. 1920, Signed, Sealed and Delivered in the Presence of:

"C. O. Brown          Otto C. Engelking"
"George Goff

It will be observed that no reservation of the minerals underneath said land as stated in said contract was made; that on April 15, 1920, Charles R. Skinner and Cora, his wife, gave to plaintiff a Warranty Deed conveying the lands in question without any reservation of minerals; that thereafter and on October 4, 1920, the Skinners as grantors gave a Warranty Deed to "Otto C. Engelking, grantee conveying an undivided one-half (½) interest in and to all minerals under or within the lands in question;" and that thereafter and on June 6, 1921, the plaintiff gave a Warranty Deed to the Skinners as grantees conveying an undivided one-half (½) interest in and to the minerals in said land. The amended cross-petition also pleads another alleged contract dated March 29, 1920, agreeing to sell the lands in question to the plaintiff but reserving a one-half (½) interest in the minerals which belonged to Engelking, and which were not to be sold plaintiff but merely said that "one-half (½) of the coal, oil, and mineral rights to said land were reserved by Otto C. Engelking and that only our one-half (½) of said mineral rights *can be deeded by us to said town and this agreement will be made subject to our contract with Mr. Engelking as regards future mineral leases or operations.*" (Italics supplied.) (Note: This contract did not purport to agree to transfer to said town one-half (½) of said mineral rights.) Thereafter it was alleged that plaintiff as grantor conveyed to the Skinners as grantees an undivided one-half (½) interest of the minerals in said land, this deed being dated June 6, 1921, as above set forth.

After a trial to the court without a jury the court on May 8th, 1952, rendered the following judgment: it "*** finds generally in favor of the defendant Cora H. Skinner and against the plaintiff Town of Glen-

rock, Wyoming, a municipal corporation, and finds that the title of the defendant Cora H. Skinner in and to an undivided one-half interest in the oil, gas and other minerals, in, under and upon the real estate and premises described in plaintiff's petition a n d known as the Glenrock City Park, and described in defendant Cora H. Skinner's cross-petition, and hereinafter described should be quieted in said Cora H. Skinner and against the Town of Glenrock, Wyoming, a municipal corporation, and further finds that said Plaintiff Town of Glenrock, Wyoming, a municipal corporation, has no right, title or interest whatever in or to an undivided one-half of the oil, gas and other minerals in, under and upon the real estate a n d premises above mentioned and hereinafter described. ***

"IT IS THEREFORE HEREBY CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that Cora H. Skinner have judgment against the Town of Glenrock, Wyoming, a municipal corporation, and that an undivided one-half interest in and to all the oil, gas and other minerals in, under and upon all that part of Lot 4, Section 4, Township 33 North, Range 75 West of the 6th P.M., Converse County, Wyoming, lying and situate east of the center of the channel of Deer Creek, more particularly described as follows, to-wit:" (here appears a description by metes and bounds) "be, and the same hereby is, quieted in said Cora H. Skinner and against the Town of Glenrock, Wyoming, a municipal corporation, and that said Town of Glenrock, Wyoming, a municipal corporation, be and it hereby is forever enjoined and debarred from asserting any right, title or interest in and to said real estate and premises adverse to the defendant Cora H. Skinner."

*No oral testimony whatever was given in the cause on behalf of the plaintiff;* it simply introduced in evidence the Warranty Deeds above described with other instruments not now material and then rested. It did not even introduce any rebuttal testimony or evidence.

The prevailing opinion cites 31 C.J.S. 203 § 21 but

does not quote the text in full or that part of it supplying the reason for the rule, so the writer quotes the text as he desires to have it appear in this opinion as follows:

"*With qualifications which will appear*, the general rule is that, if a grantor of real estate having no title, a defective title, or an estate less than that which he assumed to grant, subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit, or to his successors, by way of estoppel of the grantor or those claiming under him, particularly where the conveyance was with covenants of warranty. However, one who relies on estoppel for an after-acquired title can have no greater right than has the grantor against whom the estoppel is claimed. (Italics supplied.)

"*Reason for rule.* It has been held that the rule rests on the ground that it would be iniquitous to permit one, after he has asserted ownership of land and made a deed conveying it to another, on a valuable consideration, to obtain by deed an outstanding title and hold it against his purchaser in spite of the deed he has made to him. However, the reason usually assigned is that the rule was adopted to avoid circuity of action."

Applying the rule just quoted it is argued that the Skinners parted with their one-half (½) mineral interest received by the Town's deed of June 6, 1921, to them as effectively as if the Town had conveyed that interest to the Skinners prior to the Skinners having conveyed the same to Engelking.

This is said because of the Warranty Deed aforesaid given by the Skinners to Engelking to the property in question under date of October 4, 1920; in other words that Engelking received the one-half (½) interest in the minerals in the land in question and still holds it. But this view, I think, is a mistaken one.

The Warranty Deed aforesaid of Engelking to Chas. R. Skinner and Cora H. Skinner was recorded in the office of the County clerk and E-Officio Register of Deeds in Converse County on February 28, 1920, said deed being as above indicated dated February 25, 1920.

The Warranty Deed aforesaid from Charles R. Skinner and Cora H. Skinner to the Town of Glenrock (plaintiff herein) was recorded in the office of the County Clerk and Ex-Officio Register of Deeds of Converse County on April 27, 1920, said deed being dated April 15, 1920, as above stated. The record of the deed last mentioned disclosed to the world that on October 4, 1920, when the Skinners undertook to transfer by Warranty Deed a one-half (½) interest in the mineral rights in the land in question to Engelking they had nothing to convey having passed whatever title they had to the Town of Glenrock by their deed above mentioned of April 15, 1920. In this connection it may be well to recall that 31 C.J.S. 272 § 71 states the rule to be:

"Record of notice of title: A public record is an available means of information as to questions of title, and one who does not take advantage of it cannot claim estoppel against one who merely fails to furnish such information."

It is apparent from the situation shown, as above, that both Engelking and the Skinners are chargeable with notice and knew that at the time, October 4, 1920, they, the Skinners, had no title whatsoever to convey by their Warranty Deed of that date to Engelking.

19 Am. Jur. 742, § 86 declares that:

"Ordinarily, the courts refuse to give effect to an estoppel where the parties were equally well informed as to the essential facts or where the means of knowledge were equally open to them."

This statement is supported by citations from the Supreme Court of the United States and many State Courts of Last Resort. In 31 Fed. 249, 250, Viele v. Van Steenberg, Judge Shiras held in the Circuit Court for the Northern District of Iowa that: (Syllabus 4)

"Where a conveyance of land is made to one who knows that his grantor has no title, a court of equity, in the absence of evidence of good faith, or that said grantee claimed any interest in the lands, is not bound to hold that the acquisition of a good title by the grantor, long after the date of the deed, shall at once inure to the benefit of said grantee."

In the case of Bumpas v. Cobb, Tex. Civ. 71 S.W. (2d) 925, 927, the court said:

"Appellant assigns error on the court's refusal to permit the introduction in evidence of a certain lease executed by Celia Cobb in favor of one of her sons covering the same land here involved, executed subsequent to the lease of January 14th. It is contended in this connection that appellant would have been entitled to recover the title to Celia Cobb's interest conveyed to her son under the doctrine of after acquired title. We cannot sustain this contention. The interest of Celia Cobb in the land was separate and distinct from that of her children. Appellant knew that to be a fact at the time he secured the lease of January 14th. This lease was void as to the interest of Celia Cobb."

In Hillers v. Local Federal Savings & Loan Ass'n, 204 Okla 615, 618, 232 P. (2d) 626, 630, the Supreme Court of Oklahoma remarked:

"Ordinarily, the courts refuse to give effect to an estoppel where the parties were equally well informed as to the essential facts or where the means of knowledge were equally open to them. State of Oklahoma v. State of Texas, 268 U. S. 252, 45 S. Ct. 497, 69 L. Ed. 937. A distinction is sometimes made as to the duty of exercising diligence to learn the truth between cases where the claim of estoppel is based on mere silence or inaction, as here, and those where it is based on af-

firmative representation or conduct, the view being taken that the availability of a means of knowing the true state of facts, as by reference to the public records, bars a claim of estopped (estoppel) in cases of the former class;"

In Waldrip v. Olympia Oyster Co., 40 Wash (2d) 469, 244 P (2d) 273, 278, the Supreme Court of Washington asserted that:

"Where the parties have equal means of knowledge there can be no estoppel in favor of either. Bellingham Securities Syndicate, Inc. v. Bellingham Coal Mines, Inc., 13 Wash. 2d. 370, 125 P. 2d 668; Georghegan v. Dever 30 Wash. 2d 877, 194 P. 2d. 397."

This case was decided May, 1952.

In Crooker v. Hollingsworth 210 Miss. 636, 46 So. (2d) 541, 544, where appellee contended that there are in equity certain exceptions to the general rule of after-acquired title, it was pointed out that when the appellee obtained the quit-claim deed in 1920 he knew the exact status of the entire title to the land. With such a situation before it the Supreme Court of Mississippi "in banc" very well said:

"In 31 C.J.S. Estoppel, § 21, p.205, it is s a i d : 'Grantee's knowledge. It has been held that a subsequently acquired title will not pass where the grantee knew of the deficiencies in the grantor's title.' To the same effect is 21 C.J., p. 1077, Sec. 42.

"The after-acquired title dectrine is founded upon the principles of equitable estoppel. The opinion in Meyerkort v. Warrington, Miss. 19 So. (2d) 433, 435, while withdrawn because the case was compromised and settled while a suggestion of error was pending, aptly states two well-recognized rules of equitable estoppel which have some application to the facts here presented: '*** In the absence of extremely persuasive circumstances, courts will not give effect to an estoppel where the parties are equally well informed as to the essential facts, or where the means of

knowledge were equally open to them. 19 Am. Jur. p. 742; 31 C.J.S. Estoppel, § 71, p. 272, and cases under note 98. *** And, finally, there is the element essential to an equitable estoppel that the party who invokes it must have lost something or has been placed at some disadvantage by the conduct of the other party.' "

Under these authorities a n d many others which could be supplied it is evident that the doctrine of after-acquired title which is sought to be applied by Appellant and the prevailing opinion in this case to the record now before us may not properly be invoked.

The public records of Converse County were open alike to both Engelking and the Skinners and both parties knew, as stated above, that the Skinners by their Warranty Deed of October 4, 1920, could convey and did convey no title whatsoever. As we have seen the Skinners paid Engelking the sum of $9,000.00 for a one-half (½) interest in the minerals in the premises herein involved. Engelking by his erroneous deed gave more than they bargained for.

Nothwithstanding this outstanding fact it seems that under appellant's view and the views expressed in the prevailing opinion they (the Skinners) are to receive absolutely nothing in return; Engelking being allowed to hold a one-half (½) interest in the minerals in the property involved; he also retains the $9,000.00 the Skinners paid him and the Skinners get, as above stated, absolutely nothing.

It was the *act of Engelking in signing and delivering the short form of Warranty Deed* aforesaid with an incorrect description, viz: all of his interest in the property including both surface and mineral interests when a one-half (½) interest in the mineral rights only in this land should have been reserved by him and only a one-half interest in those rights transferred

to the said Skinner. The troubles arising in consequence of his act are the basic foundation of the instant litigation. As will hereinafter be shown from the undisputed evidence in this case, when the Town of Glenrock, plaintiff herein, bought the property it wanted, and received a Warranty Deed from the Skinners under date of April 15, 1920, it wished to obtain *only* the surface rights for use as a town park. The minutes of the Town Council show that deed given by the Town to the Skinners under date of June 6, 1921, was given to correct the error which was commenced by the delivery of the deed by Engelking to the Skinners and which was perpetuated by the deed of the Skinners to the Town. This deed gave the town something *that at that time* it did not want, viz: the mineral rights interest for which the Skinners had paid $9,000.00 to Engelking. The town merely wanted the surface rights for its park. The equities of this case are all, as the writer sees them, with the Skinners. The Town only paid $5,015.00 for the surface rights for use as a town park. It holds that surface but it should not be given a half interest in the mineral rights thereunder which in 1920 and 1921 it did not want. It only sought that interest after oil had been discovered within the town's boundaries. The prevailing opinion states "It is apparent, that after all these years the condition and value of the property had materially changed due to the discovery of oil." The doctrine of estoppel was invented and engrafted upon the law to prevent wrongs and not to promote them.

Such being the situation upon the conclusion of the trial when the cause was submitted for disposition by the court, it is also appropriate to recall for our guidance in examining the evidence herein that where there are assignments of error, as here, that the judg-

ment is contrary to law and unsupported by the evidence, an appellate court:

"*** must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it."

(Willis vs Willis, 48 Wyo. 403, 429; 49 P (2d) 670).

This rule has been repeatedly followed in subsequent cases decided in this court, see:

N.W.S. Utilities Company v. Brouilette 51 Wyo. 132, 149-150, 65 P (2d) 223; Smith v. Beard et al, 56 Wyo. 375, 394, 110 P (2d) 260; Horton v. Colborn, 60 Wyo. 263, 279, 150 P (2d) 315; Havens v. Irvine, 61 Wyo. 309, 317, 157 P (2d) 570; Jacoby v. The Town of the City of Gillette 62 Wyo. 487, 493-4, 174 P (2d) 505; White v. Maverick Production Company, 63 Wyo. 452, 461 182 P (2d) 818; Brown v. Wyoming Butane Gas Company, 66 Wyo. 67, 74, 205 P. (2d) 116; Johnson v. Johnson et al., 68 Wyo. 61, 64, 229 P (2d) 918; Williams v. Williams, 68 Wyo. 175, 183, 231 P (2d) 965.

In addition to this rule is also another well-known one referred to and followed in several cases by this court. In Jacoby v. The Town of the City of Gillette, 62 Wyo. 487, 510-11, 174 P (2d), this court said:

"The appellants come here with a general finding of the trial court against them. Concerning the effect to be given such a finding this Court has said in Hinton vs Saul 37 Wyo. 78, 259 P 185 at 191 that:

" 'And in causes tried to a court, a general finding is one of every special thing necessary to be found to sustain the judgment.' (37 Wyo 78, 259 P 185 at 191). "And in Wallis vs Nauman, 61 Wyo 231, 157 P (2d) 285 it was pointed out that in Knaggs vs Mastin, 9 Kan. 532, 533, the Supreme Court of Kansas in an opinion assented to by Mr. Justice Brewer said:

" 'Where the facts are established by a general finding of a court, it must always be presumed that all the controverted facts are established in favor of the party for whom the court finds, and against the party against whom the Court finds.' "

In the case at bar as in the Jacoby case the appellant comes here "with a general finding of the trial court" against it.

With this rule in mind it may be well to briefly review some of the testimony before the trial court and which is not at all questioned or disputed and also to examine and determine the true effect which should be assigned to the Warranty Deeds aforesaid in the light of the contract between Otto C. Engelking and Charles R. Skinner dated February 25, 1920, and the oral testimony reviewed below.

George Goff called as a witness on behalf of the defendant as well as J. R. Slaughter and Charles H. Armour testified on direct examination that he is a resident of Glenrock, Wyoming, and has been such since October 9, 1889. He is over 68 years old and at present is secretary of the Lusk Royalty Company; that he is a brother of the defendant, Cora H. Skinner, and was acquainted with Charles R. Skinner, her husband, from 1898 until his (Skinner's) death in 1937. Goff testified that he had occasion to know about the tract of land known as the City Park of Glenrock, Wyoming; that he was familiar with the transaction made by the Skinners with the Town of Glenrock wherein the town purchased this tract of land from the Skinners; that he was present when the contract was made between Otto C. Engelking and Charles R. Skinner on February 25, 1920. Goff also testified that this contract between Engelking and Skinner was signed in his presence. This contract was received in evidence without objection being defendant Skinner's

Exhibit "1", said contract providing for the sale by Otto C. Engelking of one-half (½) of the minerals and the surface to certain lands including Lot 4, Section 4; Twp 33 N., Range 75 W., for the sum of $9,-000.00; $4,500.00 of this amount was paid upon the execution of the contract and $4,500.00 was to be paid ninety (90) days from the date of execution. This contract contained the following provision: "It is understood and agreed that the parties herein shall agree and unite in any lease made to the minerals under the said land, and neither shall lease their interest without the consent of the other."- Relative to plaintiff's exhibit "5" being a Warranty Deed from Otto C. Engelking to Charles R. Skinner and Cora H. Skinner conveying, with other lands, Lot 4, Section 4 aforesaid, Goff testified that he had signed as a witness on the same day as the contract aforesaid was made. Skinners' exhibit "2" being a certified copy of a special meeting of the Town Council of the Town of Glenrock, Wyoming, which was held March 29, 1920, was received in evidence without objection. The minutes of this meeting of the Town Council contained an agreement between Skinner and the Town reading as follows: "We, the undersigned hereby agree to sell to the Town of Glenrock for the amount of five thousand dollars the following described piece of land (here is set out and described Lot 4 aforesaid by metes and bounds—this description to be subject however to an accurate survey the expense of which is to be borne equally between the buyer and the seller and to be made as soon as possible.) We hereby acknowledge receipt of Town Warrant No. 1983 for $100.00 (One Hundred Dollars) as part payment on said land and hereby agree to deliver Warranty Deed to said land to the Town of Glenrock upon completion of said survey and subject to the following provision: That one-half (½) of the coal, oil, and mineral rights of said

land were reserved by Otto C. Engelking and only our one-half ($\frac{1}{2}$) of said mineral rights can be deeded by us to said Town and this agreement will be made subject to our contract with Mr. Engelking as regards future mineral leases or operations. Said piece of land contains thirty (30) acres more or less.

Signed    Chas R. Skinner<br>
Cora H. Skinner"

Signed    J. C. Amspoker    Witness<br>
          A. R. Kimball         "

Goff testified that there was a controversy between the Town of Glenrock and Mr. and Mrs. Skinner over the amount of land as shown in the deed. He then identified defendant's (Skinner's) exhibit "3" being a map showing underground operations of the Glenrock Coal Co. which the witness testified had been in his possession since "along in 1920." The exhibit last mentioned was received in evidence without objection. Goff then testified that he recently accompanied a Mr. Johnson, an engineer, who surveyed this tract. He testified further that the deed from the Skinners to the Town of Glenrock took in more land than it was supposed to, which land was that land lying east of the west line of the Millar Lane and contained approximately five (5) acres. Witness testified that Mr. Skinner contacted certain councilmen, Mr. Putnam and Mr. Clapham "sometime along in 1920" after the deed had been given to the town of Glenrock; that the Skinners desired to correct this deed according to the agreement made; that Mr. Skinner said he wanted that land to open up a coal mine on it and Councilman Putnam said *"Well, if that is all you want with it we will make a deal. We want that land for the city park. Why don't you let us give you a deed to the Millar rights"* (this being an error and should read as

set out above "mineral rights") "and let the deed stay as is and take in the lands laying east of Deer Creek." This conversation took place in the Town Hall but not in a Council Meeting but at a meeting between Skinner, Putnam and Clapham, the latter both members of the Town Council, and that the witness was present at the time. The following exhibits were offered on behalf of the defendant Cora H. Skinner and were received without objection; defendant Skinner's exhibit "4" which was a certified copy of the minutes of the regular meeting of the Town Council on December 6, 1920, which minutes contained the following statement: *"The deed from the Town of Glenrock to Charles R. Skinner for a one-half (½) interest in mineral rights of Glenrock Park* ordered sent to City Attorney for approval." Defendant Skinner's exhibit "5" being a certified copy of the minutes of a regular meeting of the Town Council of the Town of Glenrock on June 6, 1921, contained the following statement: *"Warranty Deed correcting error in original Deed from Chas. R. Skinner ordered to be signed by the Mayor and Clerk upon motion by Putnam and seconded by Clapham and carried unanimously."*

Defendant Skinner's exhibits "6" and "7" were then offered and received in evidence without objection. Exhibit "6' is a certified copy of Chapter 19 of the ordinance of the Town of Glenrock covering Parks and Public Grounds. Skinners exhibit "7" is a certified copy of the public meeting of the Town Council of the Town of Glenrock dated June 9, 1949, at which meeting an oil and gas lease was granted to the Phillips Petroleum Company. Witness Goff testified that he was not present at the time that the said oil and gas lease was made covering City Park land. Witness also stated that he knew Charles H. Armour and has known him since approximately 1916-17; that Mr. Armour

lived in the Town of Glenrock and was Mayor of said town from 1920 to 1921.

J. R. Slaughter called as a witness on behalf of the defendant Cora H. Skinner, stated that he is 43 years old and employed at the Refinery and has lived in Glenrock practically all his life. That in 1949 he was a member of the City Council but is not at the present time. He stated that he was a member of the City Council when the Town gave the oil and gas lease to the Phillips Petroleum Company; that he thought most of the members of the Council knew that the defendant, Mrs. Skinner, and Engelking, had formerly owned "those minerals." He stated that it was the opinion of the City Attorney that the Town would have the right to lease; that the City Attorney was Miss Barber.

Charles H. Armour was called as a witness on behalf of the defendant, Cora H. Skinner; he testified that he is 62 years of age and resided in Glenrock, Wyoming, from June 1916 to the latter part of 1922, and that he is familiar with the Glenrock City Park contract as shown on defendant Skinner's exhibit "8" (a)". This witness stated that he held the position of Mayor of the Town of Glenrock from June 1920 to June 1921 and that the Council at that time consisted of John Putnam, George Barber, John Amspoker and B. L. Clapham. The witness, Armour, testified that he was not Mayor of the Town in March 1920 but was elected in May of that year and took office in June; that he had occasion to go into a contract made by Charles R. Skinner and Cora H. Skinner with the Town of Glenrock relative to the City Park land; that he knew about the agreement identified and contained in defendant Skinner's exhibit "2". Witness testified that while he was Mayor he had occasion to talk to Mr. & Mrs. Skinner about this tract of land; that the

discussion was *"on the fact that the Town got the oil rights in this sale to the Town of the park which was not intended,* and that the Skinners wanted that contract and deed rectified *because it was not the intent, the Skinners claimed, to deed the town the mineral rights because the Town was buying a park"*. This discussion, the witness said, continued over a period of several months and when the witness was asked what was finally agreed upon between the Skinners and the Town the witness replied that the Skinners came to the Town and the Town referred the matter to Attorney Mr. C. O. Brown, that is, the matter of rectifying the contract. Witness stated that the deed which the Skinners had given to the Town of Glenrock—plaintiff's exhibit "6"—was prepared by Roy Lockenour whom the witness knew very well and that it was made out "incomplete"; that the Skinners gave the Town all of Lot 4 and that the deed shows no cut-off on the Millar Lane and no reservation of mineral rights.

Witness also testified that some meetings were held with the members of the Town Council which were not held in the City Hall; that the Skinners wanted the deed rectified to conform to the agreement and that his, Skinner's contention was that the oil and mineral rights were not intended to be granted to the Town; that two of the councilmen, John Putnam and Bert Clapham, said to him as Mayor—"let us get this thing fixed up" and they (the Skinners) agreed to leave the boundary as standing at that time in the deed, if we (the Town) would give them the one-half ($\frac{1}{2}$) interest oil right, if we would deed back the oil rights. That the witness then identified plaintiff's exhibit "8" and testified that it was a photostatic copy of the deed that the Town of Glenrock gave to the Skinners on June 6, 1921, and was given for the consideration

which left the land as given in the original deed and that this deed, *plaintiff's exhibit "8" was for one-half (½) interest of the mineral rights* and that the consideration for this was that we, the Town, would grant them, or give them back, *their one-half (½) interest in the oil and leave the boundaries stand.*

On cross-examination Mr. Armour testified that the Town paid the Skinners $5015.00 for this tract of land, that the witness did not participate in the negotiations between the Skinners and the members of the Town administration and that his source of knowledge concerning the negotiations was through his being cashier of the bank and "knew everything that was going on." On cross-examination also, witness Armour, admitted that his knowledge as to what was involved between the Skinners and the Town was merely that which was told him after he became Mayor *supplemented by his examination of the office records of the Town of Glenrock;* that his knowledge of the controversy concerning the land came to him through the councilmen, Clapham and Putnam, who reported that Mr. Skinner said that it was never intended that the Town should receive minerals under the city park. The witness was asked whether in his opinion at that time the Town was to get minerals or not under the agreement between the Skinners and the Town and the witness answered "no." Thereupon the witness was asked to look at the instrument and was asked whether or not it was obvious that the Skinners were to reserve one half the minerals and the Town was to get the other one-half (½) and the witness again replied "no." The witness testified that the Town had the advice of the City Attorney, Mr. C. O. Brown, and that the transactions were governed by Mr. Brown.

With the foregoing testimony and evidence before

us which stands undisputed in the record it would appear that this case is one where the doctrine of laches should be applied to plaintiff's suit. This is a suit to quiet title admittedly an equitable action. Under the rules set forth above touching the effect to be given to a general finding and to evidence in favor of a party successful in the trial court it is clear that the plaintiff knew that it was dealing with property—mineral and oil rights when it executed the instruments it did in 1920 and 1921; plaintiff knew that such property is largely speculative and fluctuating in value; plaintiff knew that very fact called for prompt and diligent action on its part in asserting rights to property of that character. Yet, knowing these facts in 1920 and 1921 it brought no suit to assert them until May 1950 —nearly 30 years afterwards. It is an extremely significant fact that oil was discovered in the immediate area of the Town of Glenrock and within its boundaries in November 1949. Plaintiff must have known that a delay of this character in asserting rights to property of this kind should be regarded as entirely unreasonable. That fact under the authorities presently to be reviewed appears quite patent. In 19 Am. Jur. 356-357, § 513, the text says:

"Where the suit has arisen out of a sale or conveyance of real estate, the issue as to prejudice vel non may be determined in view of the showing as to whether the value of the property has changed during the period of the complainant's default. If the value of the land has not materially changed, it may be concluded that the defense of laches is not established. On the other hand, if the value of the property has appreciated, the suit may be held to be barred."

1 Thornton on the Law of Oil and Gas (5th Ed.) 263, § 149 states that:

"Owing to the fluctuation of oil and gas one seeking aid in equity must act promptly, and cannot wait un-

til such time as will best suit his personal advantage." and in 3 Lindley on Mines (3rd Ed.) § 872, pp. 2189-2190 it is said:

"The uncertain and fluctuating value of mining property that induces a court of equity to grant injunctive relief with freedom also leads the court to apply the doctrine of laches rigorously. Both state and federal courts will deny relief of an equitable nature where a plaintiff has delayed for a considerably less time than the statutory period. The supreme court of the United States has established a doctrine that the increase in value of the subject matter of the suit is a cogent reason for denying equitable relief; clearly a plaintiff who delays in order to see whether or not the mine is worth the cost of litigation is not entitled to a chancellor's consideration.\*\*\*

"\*\*\* a court will deny relief for lack of diligence, on its own initiative, even though the objection has not been raised by the pleadings. The supreme court of the United States has stated the rule trenchantly.

"There is no class of property more subject to sudden and violent fluctuations of value than mining lands. A location which to-day may have no salable (saleable) value may in a month become worth its millions. Years may be spent in working such property apparently to no purpose, when suddenly a mass of rich ore may be discovered, from which an immense fortune is realized. Under such circumstances, persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced."

In Taylor vs Salt Creek Consolidated Oil Co. 285 Federal 532, 537, 539, the United States Circuit Court of Appeals for the then Eighth Circuit s p e a k i n g through Circuit Judge Kenyon in a unanimous opinion pointed out that:

"The doctrine of laches is so firmly founded as a part of our jurisprudence that the court applies the same even though it may not be pleaded or the bill demurred

to. In Willard v. Wood, 164 U.S. 502, 524, 17 Sup.Ct. 176, 181 (41 L.Ed.531) the court held:

" 'But the recognized doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time may be applied in the discretion of the court, even though the laches are not pleaded or the bill demurred to.' "

and also that:

"The nature of the property in dispute may require more prompt action than otherwise. This is especially true as to mining and oil properties such as the situation in the case at bar. There is a special reason as to these properties why the courts should hold the parties to a rigorous rule as to laches. In Twin-Lick Oil Co. v. Marbury 91 U.S. 587, 592, 593, (23 L. Ed. 328), it is said by the court:

" 'The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for a thousand dollars as its fair value may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily avait (await) the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.'

"In Johnston v. Standard Mining Co., 148 U.S. 360, 370, 13 Sup. Ct. 585, 589 (37 L.Ed. 480), the court said:

" 'The duty of inquiry was all the more peremptory in this case from the fact that the property of itself was of uncertain character, and was liable, as is most mining property, to suddenly develop an enormous increase in value.'

"Speaking of mining properties in Patterson v. Hewitt, 195 U.S. 309, 321, 25 Sup. Ct. 35, 38 (49 L. Ed. 214), the court says:

" '*** Persons having claims to such property a r e bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced.'

"In Reed v. Munn et al., 148 Fed. 737, 760, 80 C.C.A. 215, 238 (this circuit), referring to this class of property, the court uses the following language:

" '*** A class of property which, because of its well-known constantly vacillating character may be practically worthless to-day, and, under the energy and expenditure of money by an after-taker and claimant, in a brief period may develop the presence of vast wealth in ore. In respect of such a claim equity demands that the claimant should be awake to his rights, prompt in their assertion, and eager in their pursuit, lest his slothfulness and indifference work a great wrong to innocent parties.' "

Circuit Judge Robert E. Lewis and District Judge Youmans concurred in these views. There was no dissent.

As its second affirmative defense to defendant's amended cross-petition the plaintiff pleaded the Statute of Limitations supplementary to what was alleged in its complaint or petition, viz: that plaintiff and its predecessors in interest have been: "in actual, continuous, open, notorious and uninterrupted possession for more than ten years preceding the filing of its complaint in or to the said premises." Much reliance seems to have been predicated by plaintiff upon this pleading, but it would seem upon a careful survey of the authorities that the position is not tenable. It may be noted first that no *hostile or adverse* possession is alleged. Under the evidence reviewed above and the rules already mentioned as to how such evidence should

be considered in an appellate court it is clear that we are dealing with a severed title, that is, we have before us a title desired by the town for park purposes, the surface of the property involved and also a subsurface title to the minerals, coal, oil, etc., which was wanted by the defendant, Skinner, for coal, oil, etc., for their intrinsic value with no connection with the park purpose sought by the town. In such circumstances the law is as the authorities tell us:

"When there has been a severance of the surface and mineral rights, the possession of one is not hostle to the other." (Morrison—De Soto, Oil and Gas Rights, p. 147-8), and citing cases from the Supreme Courts of Pennsylvania and Illinois.

"The decisions are unanimous in holding that where the title to the mineral right has been severed from the title to the surface, possession of the surface by its owner is not adverse to the owner of the mineral below it. The mineral owner does not lose his possession by any length of nonuser, and the surface owner cannot acquire title to the minerals by adverse possession based on his exclusive and continued occupancy of the surface alone. It is said that inasmuch as the severance of the title of the mineral estate from the surface estate creates two estates, which are as distinct as if they constituted two different parcels of land, it naturally follows that the title to one cannot be acquired by adverse possession of the other." (1 Am. Jur. § 119, p. 858).

"*** where a severance of title has been effected, title to the mineral cannot be acquired by adverse possession to the surface, for such possession is not inconsistent with, nor hostle to, the title of the owner of the mineral estate. In other words, the general rule on this subject is that title to the freehold of either the surface or the minerals thereunder cannot be acquired by adverse possession of the other.

"The possession of the holder of each estate is referable to his title . . . . . The owner of the surface can no more extend his possession of his own estate down-

ward than the owner of the stratum can extend his possession upward, so as to give him title to the surface under the statute of limitations.

"The mere owner of, and in possession of, the surface of land cannot, after a severance of the minerals in the land, maintain a suit to quiet title to the latter;" (3 Lindley on Mines, (3rd Ed.) § 812, p. 2000.)

In Ohio Oil Co., v. Wyoming Agency, 63 Wyo. 187-206, 179 P (2d) 773 this court said on page 206:

"There could have been no adverse possession of minerals that have never been worked or even discovered. The authorities are unanimous in holding that where the surface and mineral estates have been severed, possession of the surface by its owner, cannot be adverse to the owner of the minerals, and that there can be no adverse possession of the severed mineral estate in the absence of mining operations. The cases are collected in notes, 13 A.L.R. 375; 67 A.L.R. 1442; 93 A.L.R. 1232. The rule is not changed by the fact that no one knows what minerals are or are not present. Stowers v. Huntington Development Gas Co., 72 Fed. 2d 969, 98 A.L.R. 536. *It is immaterial that the surface occupant claims the minerals under a deed that conveys the land by its customary description without reference to mineral rights reserved by an earlier recorded deed.* J. R. Crowe Coal & Mining Co. v. Atkinson, 85 Kan. 357, 116 P. 499; Renfro v. Hanon, 297 Ill. 353, 130 N.E. 740; 1 Am. Jur., Adverse Possession, § 119." (Italics supplied).

And C.J.S. 58 § 135, p. 223, has this to say:

"Where by conveyance or reservation, the sub-surface mineral rights are severed from the surface rights to the land, there are two distinct estates, as discussed infra § 156, and in such case possession of the mineral interest is not possession of the surface, and, conversely, possession of the surface is not possession of the minerals thereunder. Accordingly, after severance the surface owner and those claiming under him can acquire no adverse possession of the minerals merely by reason of exclusive possession of the surface; ***"

It is said that the foregoing case (63 Wyo) is not in point but it would be if the controversy was between Engelking and the Town. It seems to the writer that this is a wrong view of the case. The Ohio Oil Co. case points out that where the surface and mineral estates have been severed possession of the surface by its owner cannot be adverse to the owner of the minerals and that there can be no adverse possession of the severed mineral estate in the absence of mining operations. From the date in 1920 when the Town purchased the surface of this property for a park to 1949 there were no mining operations conducted by anyone in its behalf on the premises. It should not be overlooked that the Town by its deed of June 6, 1921, severed the surface and mineral estates granting one-half (½) of the mineral estate to the Skinners and retaining the surface itself.

It is uncontradicted that the Plaintiff (the town) has never attempted to drill for or work the minerals below the surface of its park except as may be inferred from any work done by its lessee, the Phillips Petroleum Company, the lease to which corporation was given on June 9, 1949, by the town. Of course as to that work the ten year Statute of Limitations cannot here apply.

As the writer of this opinion sees the matter it is obvious that the Statute of Limitations cannot properly be invoked in this case.

Finally, it should not be overlooked that the deed of June 6, 1921, from the plaintiff (the Town of Glenrock) to the Skinners was one in which said town "conveys and *warrants* to Charles R. Skinner and Cora H. Skinner" *** "an undivided One-half (½) interest in and to all coal, petroleum, oil, naptha, gas, asphaltum, by-products of oil, metals, ores, and all

minerals of every kind and description to be found under or within" the premises in controversy; this being so and recalling that in McAdams v. Bailey 169 Ind. 518, 82 N.E. 1057, 1059, the law is stated to be:

"The fruit and effect of a warranty in a deed is that it concludes the warrantor, so that all his present and future rights, that he hath or may have in the land, are thereby extinct. Shep. Touch. 181."

It is difficult to perceive that the Town of Glenrock should be allowed to succeed in this litigation as against the persons to whom this covenant of warranty by the Town was given. It would seem that the covenant of warranty of said deed is regarded as non-existent.

The writer hereof cannot yield assent to an opinion which, as it seems to him, completely ignores the findings of the Trial Court and the rules which this court has made over a period of many years for the review of such findings and a judgment in accord therewith. The prevailing opinion in this case seems to the writer not to review the record before us in accordance with the rules aforesaid but undertakes to try the case "anew" on the record submitted. Judgment of the District Court of Converse County was correct and in the writer's view, should be affirmed.